# 2008 DTA 62

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VIII**

ISRAEL RIVERA NATER Y TERESA RODRÍGUEZ
Apelados

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS
Apelantes

Núm. KLAN-2007-01538

San Juan, Puerto Rico, a 17 de abril de 2008

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Jiménez Velázquez

Colón Birriel, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

#### I

El Estado Libre Asociado de Puerto Rico (en adelante, el *"ELA"*), recurre de una **Sentencia** dictada por el Tribunal de Primera Instancia, Sala de Bayamón, Hon. Yazmín Nadal Arroyo, Juez, el 17 de agosto de 2007, en el caso *Israel Rivera Náter y Ana Teresa Rodríguez v. Estado Libre Asociado de Puerto Rico y otros,* Civil Núm. DDP2001-0812, sobre: daños y perjuicios. Mediante el dictamen, archivado en los autos copia de su notificación el 24 de agosto de 2007, instancia declaró **Ha Lugar** la demanda presentada por Israel Rivera Náter y Ana Teresa Rodríguez (en conjunto, los *"apelados"*), condenando al ELA a satisfacer $50,000 al señor Rivera Náter y $10,000 a la señora Rodríguez por sus daños, pérdida de ingresos, sufrimientos y angustias mentales, así como las costas del proceso y el interés legal desde la presentación de la reclamación.

Considerado el recurso, en Resolución de 6 de noviembre de 2007, concedimos al ELA un plazo de cuarenta y cinco (45) días para presentar una exposición narrativa por estipulación con los apelados. Para ello, ordenamos a la Secretaría del Tribunal de Primera Instancia, Sala de Bayamón, permitir al ELA regrabar la vista.

Por su parte, el 11 de enero de 2008, los apelados presentaron Moción Solicitando Desestimación, predicada en que el término concedido al ELA para presentar la exposición narrativa había vencido y no la había presentado. El 16 de enero de 2008, el ELA presentó Moción Informativa y en Oposición a Desestimación, acompañándola con copia de la exposición narrativa ordenada. Mediante Resolución de 22 de enero de 2008, declaramos **No Ha Lugar** la solicitud de desestimación peticionada por los apelados, concediéndoles término de diez (10) días para expresar sus enmiendas u objeciones a la exposición presentada por el ELA.

Transcurrido en exceso el término concedido a los apelados para expresar sus enmiendas u objeciones a la exposición narrativa presentada, mediante Resolución de 19 de febrero de 2008, la acogimos como una estipulada. Por otro lado, concedimos a los apelados término de trenita (30) días para presentar su alegato, quienes en cumplimiento con lo ordenado, el 4 de marzo de 2008, comparecieron.

Resolvemos con el beneficio de las comparecencias, la Exposición Narrativa Estipulada de la Prueba Testifical, el derecho y la jurisprudencia aplicable, no sin antes exponer los hechos pertinentes, conforme surgen de los documentos ante nuestra consideración.

## II

Los hechos que dieron margen a la reclamación de los apelados, comienzan el 1 de agosto de 2000, ocasión en que el señor Rivera Náter salía caminando del Colegio Nacional, en el Municipio de Toa Alta, hacia su vehículo que se encontraba estacionado a orillas de la carretera estatal número 861, cayendo en un hueco ocasionado por el deterioro de la cuneta. Como consecuencia de la caída, sufrió fractura del brazo derecho, recibiendo fuertes golpes en el hombro, la cabeza y la espalda baja. En consideración de lo cual, requirió tratamiento de enyesado del brazo por varios meses y terapias físicas.

Por los hechos antes relatados, el 31 de julio de 2001, los apelados presentaron Demanda en daños y perjuicios contra el ELA, el Departamento de Transportación y Obras Públicas y el señor Jorge Izquierdo, en su carácter de Secretario de Transportación y Obras Públicas. En su reclamación alegaron que la causa próxima de los daños sufridos por el señor Rivera Náter fueron como consecuencia de la negligencia y falta de mantenimiento de la carretera.

Así las cosas, el 9 de julio de 2002, el ELA presentó escrito titulado Comparecencia Especial en Solicitud de Desestimación mediante la cual alegó que no se había adquirido jurisdicción sobre su persona, toda vez que no se había cumplido con el requisito legal de notificación al Secretario de Justicia. Por su parte, los apelados se opusieron a la desestimación solicitada.

Nuevamente, el 10 de febrero de 2003, el ELA presentó una segunda solicitud de desestimación, por los mismos fundamentos que la anterior.

Tras varios incidentes procesales, el 19 de enero de 2005, instancia emitió Resolución declarando **No Ha Lugar** la solicitud de desestimación del ELA, ordenando a la Secretaría expidiera emplazamientos dirigidos al ELA, por conducto del Secretario de Justicia, trámite que se llevó a cabo oportunamente. Inconforme, el ELA presentó reconsideraciones a dicha determinación, las que fueron declaradas **No Ha Lugar**.

Posteriormente, el 26 de septiembre de 2005, el ELA presentó su contestación a la demanda.

Concluido el descubrimiento de prueba, el 3 de agosto de 2006, las partes presentaron el Informe de Conferencia Preliminar entre Abogados.

El 7 de junio de 2007, se llevó a cabo la vista en su fondo. A la audiencia comparecieron las partes representadas por sus respectivos abogados. Los apelados presentaron evidencia documental y testifical, consistente la testifical en el testimonio del señor Rivera Náter, la señora Rodríguez, la señora Diana Marie Rivera Rodríguez y el señor Hermán Pérez. Su evidencia documental consistió en copia del récord de la Sala de Emergencia del Hospital del Maestro, copia del contrato personal docente a jornada parcial de la Universidad de Interamericana del señor Rivera Náter y fotografías. Como prueba estipulada por las partes se sometió: fotocopia de fotos del área del accidente, fotos del incidente y copia del informe de la Policía de Puerto Rico. Por su parte, el ELA se limitó a contrainterrogar a los testigos, sin ofrecer prueba a su favor.

Finalmente, como hemos mencionado, el 17 de agosto de 2007, instancia dictó **Sentencia** declarando **Ha Lugar** la demanda presentada por los apelados, condenando al ELA a satisfacer $50,000 al señor Rivera Náter y $10,000 a la señora Rodríguez por sus daños, pérdida de ingresos, sufrimientos y angustias mentales, así como las costas del proceso y el interés legal desde la presentación de la reclamación. El 5 de septiembre de 2007, el ELA solicitó Determinaciones de Hechos Adicionales y Conclusiones de Derecho; no obstante, la solicitud fue presentada fuera del término de diez (10) días prescrito para ello por las Reglas de Procedimiento Civil. En consideración a lo cual, el 2 de octubre de 2007, notificada el 18 de ese mes y año, instancia emitió Resolución declarando **No Ha Lugar** la solicitud del ELA.

Inconforme con la determinación, el 23 de octubre de 2007, el ELA presentó su recurso de apelación, aduciendo que incidió instancia: a) en la apreciación de la prueba sobre la causa del accidente; y b) al conceder una indemnización excesiva al apelado Rivera Náter.

## III

Por estar estrechamente relacionados los señalamientos, los analizaremos en conjunto. En síntesis, se circunscriben a que incidió el tribunal en la apreciación de la prueba vertida en juicio. Veamos la normativa aplicable.

Resulta un principio básico en nuestro ordenamiento jurídico que en la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, el alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, la cual, en lo pertinente, dispone que:

*"...las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos...*

*Por ello, nuestro Tribunal Supremo ha establecido que no debemos intervenir con las determinaciones de hechos que hace un Tribunal de Primera Instancia y sustituir nuestro criterio, por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. Ramos Acosta v. Caparra Dairy, Inc, 113 D.P.R. 357, 365 (1982).*

*...y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical, y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad; la observación...". Ortiz v. Cruz Pabón,* 103 D.P.R. 939, 947 (1975).

De ahí la norma trillada de *"no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto". Monllor Arzola v. Sociedad de Gananciales,* 138 D.P.R. 600, 610 (1995); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985); *Pérez Cruz v. Hospital La Concepción,* 115 D.P.R. 721, 728 (1984). No obstante, *"[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal".* (Citas Omitidas.) *Ramos Acosta,* 113 D.P.R.____, a la pág. 365.

Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que *"del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida".* Véase, *Maryland Casualty Co. v. Quick Const. Corp.,* 90 D.P.R. 329, 336 (1964). Además, es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aún adoptar su propio criterio en la apreciación de ella. *Moreda v. Rosselli,* 150 D.P.R. 473, 479 (2000); *Cruz v. Centro Médico de P.R.,* 113 D.P.R. 719, 721 (1983); *Velázquez v. Ponce Asphalt,* 113 D.P.R. 39, 48 (1982). No obstante, nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los

elementos requeridos por la causa de acción. *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 821-822 (1987).

El caso de autos trata de una reclamación de daños por la falta de mantenimiento de una carretera, regulado por las disposiciones del Artículo 404 del Código Político, 3 L.P.R.A. § 422.

En específico, el Artículo 404, dispone que:

*"[E]l Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos."*

Conforme al Artículo 397 del Código Político, 3 L.P.R.A. § 419, para efectos del Artículo 404, se considera como carretera perteneciente al Estado Libre Asociado:

*"[T]odos aquellos caminos o vías públicas que hayan sido o puedan ser construidos y estén entretenidos en la actualidad o en lo futuro, con fondos estaduales, o que estén incluidos en el plan general de los caminos que han de construirse y conservarse con fondos estaduales que pueda más adelante ser aprobado y decretado por la Asamblea Legislativa de Puerto Rico."*

En síntesis, el Artículo 404 impone responsabilidad al Estado por todo aquel menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, ya en su propiedad o patrimonio, causados en las vías públicas estatales por: 1) desperfectos; 2) falta de reparación; y 3) falta de protección suficiente para el viajero. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 862 (1978).

Sin embargo, nuestro más Alto Foro ha determinado que *"las condiciones de peligro que deben existir en la vía pública para que el Estado responda con arreglo al 404 por los daños que ocasionen debido a las mismas, constituye una violación al deber de previsibilidad exigido por el Artículo 1802"*. *Dones Jiménez v. Aut. de Carreteras*, 130 D.P.R. 116, 120 (1992).

El referido Artículo del Código Político constituye una de las excepciones a la inmunidad del Estado a ser demandado. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702, 708 (1990); *Publio Díaz*, 106 D.P.R. _____, a la pág. 862.

Como mencionáramos, el Artículo 404 del Código Político se nutre de los elementos preceptuados en el Artículo 1802 del Código Civil, 31 L.P.R.A. § 5141. La distinción entre el Artículo 404 del Código Político y el Artículo 1802 del Código Civil estriba en que bajo el primero no es necesario probar la culpa o negligencia del Estado. Ello es así, debido a que existe un deber general de mantener las vías públicas en buen estado y de tomar las medidas necesarias para que éstas no representen un peligro para los que transitan por ellas. Claro está, quien reclama los daños siempre tiene la obligación de probar la relación causal entre los desperfectos en la vía pública y los daños sufridos. *Dones Jiménez*, 130 D.P.R._____, a la pág. 120; *Cárdenas Maxán*, 125 D.P.R._____, a las págs. 709-710. Por lo tanto, la invocación del Artículo 404 del Código Político, no libera a un demandante de probar que el defecto en la vía pública fue la causa eficiente del accidente.

El lenguaje de la disposición discutida es claro en tanto y en cuanto indica que para estar exento de responsabilidad, el Estado tiene que presentar prueba para sostener que los desperfectos de la carretera se debieron a la violencia de los elementos y que no contó con tiempo suficiente para tomar medidas correctivas o a caso fortuito. De lo contrario, tendrá que responder civilmente.

El reclamante sólo tiene que probar que sufrió daños, que los desperfectos en las vías públicas fueron la causa eficiente del accidente, y que el ELA violó su deber de previsibilidad.

Sin embargo, tampoco podemos olvidar que es impropio exigirle al Estado el deber imposible e irrazonable de mantener las veinticuatro (24) horas del día todas las vías de comunicación en perfectas condiciones, ya que la cantidad de tráfico vehicular que transita por las calles y avenidas de Puerto Rico, las condiciones climatológicas tropicales de la isla y las limitaciones económicas y humanas del Estado, lo impiden. *Cárdenas Maxán,* 125 D.P.R.____, a la pág. 714.

Como regla general, una reclamación basada en alegaciones de culpa o negligencia se tiene que enmarcar en el contexto del Artículo 1802 del Código Civil de Puerto Rico, el cual dispone:

*"El que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".* (31 L.P.R.A. § 5141).

*Valle v. E.L.A.,* 157 D.P.R. 1, 14 (2002).

Nuestro Tribunal Supremo en reiteradas ocasiones ha establecido el alcance de dicho artículo. Es claro que para que la responsabilidad civil se imponga a favor del demandante es necesario establecer: (1) la realidad del daño sufrido; (2) el nexo causal entre el daño y la acción u omisión de otra persona; y (3) que el acto u omisión imputado es culposo o negligente. *Ramos Milano v. Wal-Mart Puerto Rico, Inc.,* Op. de 8 de junio de 2006, **2006 J.T.S. 106,** a la pág. 1441; *Pons Anca v. Engebretson,* 160 D.P.R. 347, 354 (2003); *Toro Aponte v. E.L.A.,* 142 D.P.R. 464, 472-473 (1997); *Ramírez Salcedo v. E.L.A.,* 140 D.P.R. 385, 391 (1996); *Santini Rivera v. Serv. Air Inc.,* 137 D.P.R. 1, 6 (1994).

Nuestro más Alto Foro de Justicia ha expresado que *"para sostener una reclamación de daños y perjuicios corresponde al demandante poner al juzgador en condición de determinar, sin recurrir a especulaciones, los daños y perjuicios realmente sufridos por él."* *Rodríguez v. Serra,* 90 D.P.R. 776, 778 (1964).

Es principio fundamental en derecho que el foro de instancia es quien estuvo en contacto directo con la prueba, en especial la prueba testifical, por lo que los tribunales apelativos deben abstenerse de intervenir respecto a las cantidades concedidas a menos que éstas sean ridículamente bajas o exageradamente altas, ello, fundado en criterios de estabilidad y respeto a los tribunales de primera instancia. *Urrutia v. A.A.A.,* 103 D.P.R. 643, 647-648 (1975). La cuantificación necesaria y justa para compensar los daños queda en el sano juicio, la experiencia y discreción del juzgador. *Concepción Guzmán v. A.F.F.,* 92 D.P.R. 488, 502 (1965). Ello reitera la norma de abstención judicial para intervenir con la apreciación de la prueba que hizo el foro de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad. *S.L.G. Rodríguez v. Nationwide, Ins. Co.,* 156 D.P.R. 614, 623 (2002). De ahí que la parte que solicita la modificación de las sumas concedidas a nivel de instancia venga obligada a demostrar la existencia de circunstancias que hagan meritorio modificar las mismas. *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 451-452 (1985).

Respecto al carácter reparador de la acción bajo el Artículo 1802, nuestro ordenamiento jurídico ha sido enfático al expresar que la estimación y valorización de los daños es una gestión o tarea difícil y angustiosa, ello debido al cierto grado de especulación en la determinación de éstos y por incluir a su vez elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de hechos. *S.L.G. Rodríguez,* 156 D.P.R.____, a la pág. 622; *Rodríguez Cancel,* 116 D.P.R.____, a la pág. 451.

Nuestro Tribunal Supremo, en *Urrutia v. A.A.A.* 103 D.P.R. 643, 647-648 (1975), expresó que:

*"Bajo la fórmula amplia de responsabilidad consagrada en el Artículo 1802, no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana".*

Nuestro esquema jurídico establece que la existencia de un cierto elemento de especulación no impide que el tribunal, a base de los hechos particulares, la prueba presentada y los criterios ya establecidos, pueda determinar una cuantía adecuada y razonable para compensarle al reclamante los daños sufridos. *Publio Díaz*, 106 D.P.R.____, a la pág. 871. Si bien en principio los daños intangibles, como lo son el sufrimiento, las angustias mentales y los daños emocionales, se consideran daños no patrimoniales, ya que su valoración pecuniaria no se funda en una equivalencia matemática, no por eso dejan de ser compensables en dinero. G. Ortiz Ricol, Valoración Jurídica del Daño Moral, III (Núm. 11) Rev. Der. Esp. y Amer. 141 (1958). Después de todo, los daños morales pueden ser de tal magnitud que su importancia exceda la de cualquier daño material sufrido. *García Pagán v. Shiley Caribbean*, 122 D.P.R. 193, 206 (1988). Lo importante en cuanto a la determinación de daños por sufrimientos y angustias mentales es que éstos se otorguen, siempre y cuando la existencia de éstos quede debidamente establecida por el promovente del pleito. *S.L.G. Afanador v. Roger Elec. Co., Inc.*, 156 D.P.R. 651, 667 (2002).

La valoración del daño constituye un elemento fundamental en nuestro ordenamiento jurídico. Partimos de la premisa de que la tarea judicial de estimar y valorar los daños resulta difícil y angustiosa, debido a que no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. *Vázquez v. ELA y otros*, Op. de 19 de septiembre de 2007, **2007 JTS 173**, a la pág. 179; *Nieves Cruz v. Universidad de Puerto Rico*, 151 D.P.R. 150, 169-170 (2000); *Blás v. Hospital Guadalupe*, 146 D.P.R. 267, 339 (1998). Conceder cuantías insuficientes por concepto de daños sufridos tiene el efecto de aminorar la responsabilidad civil a la que deben estar sujetas las actuaciones antijurídicas. A.J. Amadeo Murga, El valor de los daños en la responsabilidad civil, 1ra ed., San Juan, Ed. Esmaco, T. I, 1997, a la pág. 31. Por el contrario, una valoración exagerada daría lugar al elemento punitivo, ajeno a nuestro sistema de derecho. *Id*.

Para que el sistema civil cumpla con sus propósitos, los tribunales deben propiciar que se logre la más razonable proporción entre el daño causado y la indemnización concedida. Amadeo Murga, op. cit., a la pág. 31. Sin embargo, se reconoce que la función de valorar el daño es sumamente difícil, particularmente cuando se trata de valorar daños no patrimoniales o daños morales. *Blás*, 146 D.P.R.____, a la pág. 339. En muchas ocasiones se recurre a la alternativa de reparar el daño mediante la concesión de una suma de dinero que se establece como *"equivalente"* a la pérdida sufrida. Véase, *Rodríguez Cancel*, 116 D.P.R.____, a las págs. 455-456.

La preocupación por la dificultad y complejidad de valorar los daños ha sido manifestada por los tribunales en reiteradas ocasiones. Así, en *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762, 805 (1987), el Tribunal Supremo expresó:

*"La determinación de una compensación justa y razonable por los daños sufridos [es] tarea que constituirá un reto aun para un Salomón del siglo XX. [Cita omitida]. La apreciación humana valorativa de elementos que no son ostensibles y visibles, sino intangibles... no está exenta de cierto grado de especulación. Aspiramos a que toda adjudicación sea razonablemente balanceada, esto es, ni extremadamente baja como tampoco desproporcionalmente alta".*

Enfatizamos que es principio fundamental en derecho que el foro de instancia es quien estuvo en contacto directo con la prueba, en especial la prueba testifical, por lo que los tribunales apelativos deben abstenerse de

intervenir respecto a las cantidades concedidas a menos que éstas sean ridículamente bajas o exageradamente altas, ello, fundado en criterios de estabilidad y respeto a los tribunales de primera instancia. *Albino v. Martínez, Inc.,* Op. el 4 de junio de 2007, **2007 JTS 117**, a la pág. 1623; *Admor. FSE v. ANR Construction, Corp.,* Op. el 23 de septiembre de 2004, **2004 JTS 162**, a la pág. 273; *Urrutia,* 103 D.P.R._____, a las págs. 647-648. La cuantificación necesaria y justa para compensar los daños queda en el sano juicio, la experiencia y discreción del juzgador. *Concepción Guzmán v. A.F.F.,* 92 D.P.R. 488, 502 (1965). Ello reitera la norma de abstención judicial para intervenir con la apreciación de la prueba que hizo el foro de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad. De ahí que la parte que solicita la modificación de las sumas concedidas a nivel de instancia venga obligada a demostrar la existencia de circunstancias que hagan meritorio modificar las mismas. *Rodríguez Cancel,* 116 D.P.R._____, a las págs. 451-452.

Resulta pertinente puntualizar que la decisión que se emita en un caso específico, en relación con la valoración y estimación de daños, no puede ser considerada como precedente obligatorio para otro caso. *Toro Aponte,* 142 D.P.R._____, a la pág. 478; *Rodríguez Cancel,* 116 D.P.R._____, a la pág. 452. La compensación otorgada a los demandantes ha de ser considerada conforme los hechos particulares del caso. *Toro Aponte,* 142 D.P.R._____, a las págs. 478-479.

Expuesto lo anterior, apliquémoslo a lo acontecido ante instancia.

Del análisis de la Exposición Narrativa Estipulada de la Prueba Testifical podemos colegir que durante el testimonio del coapelado, señor Rivera Náter, éste declaró sobre la forma en que ocurrió la caída y la causa próxima de ésta. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 6-9, 12, 45). Según su relato, la cuneta en controversia ubicaba frente al Colegio Nacional de Toa Alta y al momento de la caída estaba llena de hoyos, el asfalto estaba removido en algunas áreas, tenía muy poco cemento y no existían aceras. (Exposición Narrativa Estipulada de la Prueba Testifical, a la pág. 9). Durante la audiencia, el señor Rivera Náter expresó que al caer al suelo comenzó a gritar porque el dolor era terrible. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 12-13). Adujo que tuvo que recibir asistencia médica en el Hospital del Maestro el día del incidente y que permaneció allí hasta el siguiente día hospitalizado, tomando medicamentos y radiografías para el terrible dolor que experimentaba. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 16, 18, 20-23). Tras salir del hospital, relató que el dolor era intenso, por lo que recibía medicamentos orales, tales como Darvocet y Naproxen e inyecciones de Demerol 5h. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 23-24). Además, declaró extensamente sobre los daños emocionales que la caída en la cuneta le produjo al no poder continuar sus actividades cotidianas, como por ejemplo, el escribir su libro y la tesis de su grado doctoral. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 27-29, 32-34, 36-37, 39). Incluso, ello fue corroborado por el testimonio de la señora Ana Teresa Rodríguez, la hija de los apelados, Diana Marie Rivera Rodríguez, y el señor Hermán Pérez. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 67-70, 81-82, 91-93)

Durante su testimonio, el señor Rivera Náter en repetidas ocasiones afirmó que en ese lado de la carretera no existía una acera sobre la cual caminar, sino que la misma estaba al otro lado de la calle, por lo que resultaba obligatorio pasar a través de la cuneta en mal estado. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 43, 55-56, 61-62). Según trascendió en la audiencia, el señor Rivera Náter conoce la carretera donde ocurrió la caída porque transita por ella para ir y regresar a su hogar; no obstante, afirmó categóricamente que nunca había caminado por el lugar, por lo que no conocía de antemano las malas condiciones de la cuneta. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 40-41, 47-48, 61). Ello es contrario a lo aseverado por el ELA tanto en la vista del 7 de junio de 2007, como en su recurso de apelación, en el cual sostiene que existía una acera en el lugar y el señor Rivera Náter se negó a utilizarla, asumiendo el riesgo de caminar por la maltrecha cuneta donde ocurrió finalmente la caída. Incluso, el señor Rivera Náter, durante el contrainterrogatorio, admitió tener padecimiento de Parkinson, pero ello no le imposibilitaba realizar su vida con normalidad, a pesar de que en algunas personas donde la enfermedad está más avanzada, los movimientos

involuntarios podrían provocarles caídas. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 27, 48, 54). Además, el ELA no presentó prueba a su favor para derrotar la evidencia aportada por los apelados, limitándose sólo a contrainterrogar a algunos de los testigos.

Como parte de la prueba testifical de los apelados, prestó testimonio la esposa del señor Rivera Náter, la señora Ana Teresa Rodríguez, quien expresó que se enteró de la caída de su esposo porque su hija le llamó por teléfono y de inmediato se dirigió al Hospital del Maestro. (Exposición Narrativa Estipulada de la Prueba Testifical, a la pág. 65). Según relató, al señor Rivera Náter le estabilizaron, le inyectaron un medicamento para el dolor y le sacaron radiografías. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 65-66) Además, describió los sufrimientos y angustias mentales del señor Rivera Náter luego de la caída y como la vida familiar había cambiado, incluso los patrones de sueño. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 66-71). El ELA no presentó prueba para derrotar el testimonio de la señora Rodríguez ni la contrainterrogó.

El testimonio de la hija de los apelados, Diana Marie Rivera Rodríguez, fue a los efectos de corroborar la versión del señor Rivera Náter sobre el lugar de la caída y los daños experimentados durante y después del incidente. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 74-84).

El último testigo lo fue el señor Hermán Pérez, quien se limitó a describir el lugar de la caída, cómo encontró al apelado en el suelo gritando y los cambios de estilo de vida y emocionales que exhibía éste luego de la aparatosa caída. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 88-93). El señor Pérez no fue objeto de contrainterrogatorio por parte del ELA.

En apretada síntesis, el ELA discute que para imponer responsabilidad al Estado por desperfectos, falta de reparación o de protección suficiente para el viajero en cualquier vía perteneciente al ELA y a cargo del DTOP, es necesario demostrar que éste conocía del defecto o debió haberlo conocido, tuvo tiempo suficiente para repararlo y no lo hizo, y que el alegado desperfecto fue la causa eficiente y legal del accidente. Es decir, no basta que la parte reclamante pruebe el desperfecto, la responsabilidad del ELA de reparar el mismo y la falta a ese deber para que se le atribuya responsabilidad al Estado, sino que, a su vez, le corresponde establecer que el hecho de que existiera el desperfecto fue lo que provocó o contribuyó a los daños.

En su escrito de apelación, el ELA alegó que el accidente sufrido por el señor Rivera Náter no se debió única y exclusivamente a su culpa y negligencia. De un examen de la totalidad de la transcripción y la prueba presentada ante el foro recurrido, surge que los apelados probaron la relación causal entre el desperfecto de la cuneta y los daños sufridos. Como reseñáramos, durante la vista del 7 de junio de 2007, el señor Rivera Náter describió con detalles específicos el estado deplorable en que se encontraba la cuneta por la cual tenía la obligación de atravesar para acceder a su vehículo que se encontraba estacionado al otro lado de la carretera. Específicamente, adujo que al momento de la caída, la cuneta estaba *"llena de hoyos, el asfalto estaba removido en algunas áreas, tenía muy poco cemento y no existían aceras"*. (Exposición Narrativa Estipulada de la Prueba Testifical, a la pág. 9). Ante un cuadro tan deplorable de falta de mantenimiento, correspondía al ELA rebatir la presunción y demostrar que los desperfectos de la carretera se debieron a la violencia de los elementos y que no contó con tiempo suficiente para tomar medidas correctivas o a caso fortuito, lo que falló en hacer. Nótese que el ELA no presentó ninguna clase de prueba a su favor, limitándose solamente a contrainterrogar a algunos testigos, incumpliendo con su deber de aportar evidencia. Contrario a lo argumentado por el ELA, durante el testimonio del señor Rivera Náter, éste declaró extensamente sobre el mal estado de la carretera y ello fue corroborado por su hija, Diana Marie Rivera Rodríguez, y el señor Hermán Pérez. (Exposición Narrativa Estipulada de la Prueba Testifical, a las págs. 9, 40-43, 47-48, 55-56, 61-62, 74-75, 83-84, 88).

Una vez determinado que se probó, según requiere el Artículo 404 del Código Político y la jurisprudencia interpretativa del mismo, la relación causal necesaria para imponer responsabilidad al ELA por los hechos

ocurridos, procede confirmar la sentencia emitida.

De la anterior discusión podemos colegir que para instancia poder determinar la cuantía a ser fijada para cada uno de los daños, examinó toda la prueba y las diversas alternativas que de ésta podían ser consideradas. A tenor con su prudente y sabia discreción judicial, optó por los cálculos más conservadores, razonables y más bajos. Un examen cuidadoso del expediente, incluyendo la Exposición Narrativa Estipulada de la Prueba Testifical, revela que la determinación y computación de los daños encuentra amplio apoyo en la evidencia presentada. No hallamos fundamento alguno que justifique alterar las cuantías de daños adjudicados por instancia. En el presente caso, los daños no fueron especulativos y su causa próxima fue la negligencia del ELA al no dar el mantenimiento adecuado a la carretera donde ocurrió la caída del señor Rivera Náter. Por otro lado, las cuantías concedidas no constituyen una medida punitiva.

En resumen, encontrado probado que las determinaciones de hechos del foro de instancia resultan ser correctas, no albergamos dudas que dicho foro recibió y aquilató la prueba testifical que ha bien tuvieron en presentar los apelados para sostener sus alegaciones sobre los daños sufridos como consecuencia de la caída del señor Rivera Náter. En consideración a lo expuesto, concluimos que es improcedente sustituir la cuantía concedida por el foro de instancia a los apelados, ausente los elementos que lo justificarían, es decir, pasión, prejuicio o parcialidad del tribunal sentenciador. Los daños sufridos por los apelados fueron probados y cuantificados adecuada y razonablemente por el foro de instancia.

En mérito de lo expuesto, confirmamos la **Sentencia** de 17 de agosto de 2007, dictada por el Tribunal de Primera Instancia, Sala de Bayamón.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones