Marta Dones Jiménez y otros, demandantes y recurridos, y Luis G. Velázquez Grillo, tercero demandado y recurrido, *v.* Autoridad de Carreteras de Puerto Rico, demandada y recurrente.

*Número:* RE-90-93          *Resuelto:* 6 de marzo de 1992

*Ramón I. Ortiz Palmieri, de Parra, del Valle, Frau y Limeres*, abogado de la demandada y recurrente; *Domingo Ríos Román*, abogado del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 30 de octubre de 1984, Luis M. Laboy Ríos conducía su automóvil Pontiac Transam, modelo 1982, en dirección de Salinas a Ponce por la Autopista Las Américas. Lo acompañaba Marta Dones Jiménez. Aproximadamente a las 8:30 P.M., poco después de la Estación de Peaje localizada en el Barrio Coco, Salinas, en el Km. 59.2, impactó un toro negro que se le atravesó súbitamente. Laboy Ríos conducía a una velocidad aproximada de 55 m.p.h. No llovía. El vehículo se desvió y finalmente dio contra la valla de seguridad. Después, otros vehículos también impactaron al animal. Acudió al lugar una patrulla policíaca, quien procedió a remover el auto. El toro murió esa misma noche.

El 10 de diciembre de 1984, Laboy Ríos y Dones Jiménez reclamaron daños y perjuicios en el Tribunal Superior, Sala de Mayagüez, de la Autoridad de Carreteras de Puerto Rico (en adelante la Autoridad) y el Sr. Luis G. Velázquez Grillo, dueño del animal. La Autoridad negó responsabilidad y, eventualmente, trajo a Velázquez Grillo como tercero demandado. El tribunal de instancia (Hon. Rafael Pereira Solá, Juez) dictó sentencia solidaria contra ambos, pero fijó en un veinte por ciento (20%) la responsabilidad de la Autoridad y el remanente a Velázquez Grillo.

Inconforme, a solicitud de la Autoridad, revisamos. En síntesis, nos argumenta que: (1) no puede controlar los animales que pastan en las fincas adyacentes a la autopista y prever en qué momento y manera alguno llegará a la autopista; (2) es demasiado oneroso imponerle responsabilidad; (3) no es un garantizador absoluto de la seguridad de los viajantes, pues sólo responde por los accidentes previsibles; (4) no tiene el deber de cercar los terrenos colindantes a la autopista para evitar el traspaso de animales, y (5) finalmente, el dueño del animal es el único y absolutamente responsable.

En contrario, los demandantes Laboy Ríos y Dones Jiménez, y el tercero demandado Velázquez Grillo arguyen que la Autoridad tiene el deber de proveer y mantener en buen estado las vallas que eviten el traspaso de animales, y de advertir a los conductores de su posible presencia en la autopista. Aducen que la Autoridad negligentemente violó estos deberes.

## II

Pertenece a un tratado de Historia Antigua la teoría que consideraba al Estado inmune a las reclamaciones que en su contra pudieran ejercer los ciudadanos. Hoy, el Estado moderno, como suplidor de innumerables servicios, responde por los daños causados negligentemente. *Galarza*

*Soto v. E.L.A.* 109 D.P.R. 179 (1979). En materia de vías de carreteras, el Art. 404 del Código Político, 3 L.P.R.A. sec. 422,(¹) "[c]onstituye el precepto especial a utilizarse para evaluar acciones por daños que se ocasionen a personas o propiedades en las vías públicas estatales, cuando los mismos fuesen motivados por [daños emergentes de desperfectos, falta de reparación o de protección suficientes]". *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 862 (1978).

█ Bajo dicho artículo, se consideran carreteras estaduales "todos aquellos caminos o vías públicas que hayan sido o puedan ser construidos y estén entretenidos en la actualidad o en lo *futuro*, con fondos estaduales ...". (Énfasis suplido.) Art. 397 del Código Político, 3 L.P.R.A. sec. 419.

█ La *Autopista Las Américas* es una vía pública construida con fondos estaduales y federales, que cae dentro de esa amplia definición. Sin embargo, se distingue por una importante característica: por su uso se paga peaje. Está bajo el control de la Autoridad, actualmente adscrita al Departamento de Transportación y Obras Públicas, Art. V del Plan de Reorganización Núm. 6, 1971 (3 L.P.R.A. Ap. III), creada por la Ley Núm. 74 de 23 de junio de 1965 (9 L.P.R.A. sec. 2001 *et seq.*). El propósito de la Autoridad fue "continuar la obra de gobierno de dar al pueblo *las mejores carreteras, facilitar el movimiento de vehículos, aliviar en todo lo posible los peligros e inconvenientes* que trae la congestión en las carreteras del Estado Libre Asociado y para afrontar la creciente demanda por mayores y mejores facilidades de tránsito que el crecimiento de la economía de

---

(¹) "El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, *falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado* y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos."

Puerto Rico conlleva ...". (Énfasis suplido.) 9 L.P.R.A. sec. 2002. Como tal fue autorizada a "[t]ener completo control y supervisión sobre cualesquiera facilidades de tránsito poseídas, operadas, construidas o adquiridas por ella ... y *la construcción, mantenimiento, reparación y operación de las mismas* ...". 9 L.P.R.A. sec. 2004(d).

■ Cabe recordar que, en cuanto a la aplicabilidad del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, hemos resuelto que "las condiciones de peligro que deben existir en la vía pública para que el Estado responda con arreglo al 404 por los daños que se ocasionen debido a las mismas, constituyen una violación al deber de previsibilidad exigido por el [Art. 1802]". *Publio Díaz v. E.L.A.*, supra, pág. 863. La diferencia primordial entre ambos artículos es que bajo el Art. 404 del Código Político, *supra*, no es necesario probar la culpa o negligencia del Estado, sin embargo, el reclamante *siempre* debe probar la relación causal entre los desperfectos en la vía pública y los daños. Íd.; *Pérez Piñeiro v. E.L.A.*, 105 D.P.R. 391, 396 (1976), opinión concurrente.

## III

Lo expuesto revela claramente el *deber general* de la Autoridad de mantener las carreteras públicas en buen estado y de tomar las medidas necesarias, de modo que las mismas no representen un peligro para los que transitan por ellas. Aunque coincidimos con la Autoridad en que no hay un precepto legal *expreso* que *directamente* le imponga el deber de instalar verjas o vallas en las *autopistas*, evidentemente el mismo está ínsito en su obligación general de mantener seguras las vías, y en armonía con el deber de actuar diligentemente. Sería contrario a la política pública fijada en su ley orgánica —evitar "en lo posible los peligros"— aceptar que las autopistas puedan convertirse en

una carrera de obstáculos, cuya peligrosidad se deje exclusivamente al buen recaudo de los colindantes. La Autoridad, como agencia gubernamental que ostenta el control, tiene que velar por su mantenimiento y, bajo unos parámetros de razonabilidad, garantizar la seguridad de los usuarios.

Aclarado este extremo, fácil es advertir que las autopistas son carreteras de acceso controlado, carentes de semáforos e intersecciones. Son diseñadas para transitar a *altas velocidades*, de modo que fluya mejor el tráfico. Bajo esas circunstancias, de ordinario, los obstáculos *inesperados* son prácticamente imposibles de esquivar. La presencia súbita de animales en dichas vías es muy peligrosa, y constituye una causa directa de accidentes que pueden generar consecuencias fatales. No es necesario elucidar que la seguridad de los usuarios de las autopistas requiere que se encuentren libres de obstáculos, o *al menos, que se les advierta eficazmente de su presencia a los conductores.*

■ En el contexto del caso, concluimos que la Autoridad, como parte del mantenimiento de las autopistas en condiciones de seguridad, tiene el deber afirmativo de adoptar todas las medidas necesarias y razonables para evitar que reses u otros animales penetren la autopista, y en aquellas áreas en que sea inevitable debe advertir de su posible presencia.

La tarea no es imposible. Un modo de evitar el acceso de reses a la autopista es colocando verjas o vallas que así lo impidan. Según las determinaciones del tribunal de instancia, a lo largo de la autopista Las Américas existen vallas. Incluso la Autoridad admitió contar con una brigada especial encargada de brindarle mantenimiento a las vallas y una estación en Salinas para tales propósitos. Sin embargo, si algo demuestra éste y otros recursos es que la existencia de esas vallas no es suficiente. Es necesario que

las mismas sean adecuadas —en tamaño y fortaleza— para evitar el acceso del ganado. Nos explicamos.

*Primeramente*, en el caso de autos, según el tribunal sentenciador, la prueba reveló que las vallas en el lugar del accidente eran inadecuadas por dos (2) razones: (1) estado de deterioro (muchas se encontraban rotas); y (2) no eran suficientemente fuertes como para resistir la embestida de una res. Se estableció que el material de concreto utilizado para los postes era inadecuado pues el mismo tiende a debilitarse y romperse con los fuegos que a menudo ocurren debido al clima seco del área sur de la isla. Además, se demostró que debió utilizarse acero al construirse las vallas por ser más resistente. Finalmente, se probó que los postes ceden con facilidad, pues no fueron enterrados con suficiente profundidad. Minuta de 26 de junio de 1989, pág. 3. Aun ante esta comprobada deficiencia, la práctica de la Autoridad ha sido, en vez de reemplazar los postes, esperar a que se rompan para sustituirlos.[2]

*Segundo*, la Autoridad faltó a su deber de *alertar* a los conductores de la posible presencia de animales. A la luz de la prueba, y conforme sus propios argumentos, tenía amplio *conocimiento de la situación* y de que la misma era *repetitiva*. Apéndice, págs. 11 y 15. La negligencia en no proveer avisos surgió al faltar a su deber de mantener las autopistas en condiciones seguras. Y es que, de ordinario, el conductor —que usa un peaje— tiene derecho a presumir que la autopista es segura. Ciertamente, salvo circunstancias extremas, ese conductor no tiene el deber de anticipar peligros extraordinarios sobre los cuales no ha sido

---

[2] Aunque en otro contexto, anteriormente hemos impuesto responsabilidad al E.L.A. por faltar a su deber de proveer vallas que eviten la ocurrencia de accidentes. En *Díaz v. E.L.A.*, 118 D.P.R. 395 (1987), determinamos que el Estado era responsable en un treinta por ciento (30%) por la muerte del conductor al caer su automóvil al Lago Carraízo. Señalamos como una de las causas del accidente la ausencia de barreras o vallas. Véase, además, *Román v. E.L.A.*, 116 D.P.R. 712 (1985).

advertido. Tiene derecho a confiar en que la carretera no estará obstruida por animales.

Y *tercero*, indiscutiblemente, la Autoridad sabía que las vallas existentes, potencialmente, eran inadecuadas. Conoció que en algunos terrenos colindantes a la autopista, en especial Salinas y Santa Isabel, pastaba ganado. Velázquez Grillo testificó que antes y después del accidente le notificó y solicitó a la Autoridad que atendiera el pobre estado de las vallas. Minuta de 26 de junio de 1989, págs. 2–3. También algunos dueños de las fincas adyacentes se quejaron constantemente.

La sentencia consigna que la Autoridad fue informada de que frecuentemente algunas reses penetraban a la vía. En su testimonio, el policía Almodóvar Correa indicó que las había visto brincando las vallas. Minuta de 28 de junio de 1989, pág. 2. Díaz Larrauri —jefe de la brigada a cargo del mantenimiento de las vallas— declaró que en varias ocasiones tuvo que ayudar a removerlas de la carretera. Íd., pág. 4. Con anterioridad al accidente, la Autoridad había sido informada sobre numerosos accidentes causados por animales y con frecuencia recibía querellas sobre la presencia de reses en la carretera. Esta prueba nos permite concluir que *era totalmente previsible que un accidente ocurriera al encontrarse súbitamente cualquier conductor y su vehículo con una res en la autopista.* En resumen, la Autoridad actuó negligentemente al no tomar medidas para evitar que las reses penetraran a la carretera y por no alertar a los conductores de su posible presencia.

## IV

La Autoridad alega que no se probó que el toro llegó a la carretera a través de un hueco en la valla. A juicio suyo, no

se estableció un nexo causal entre la falta de mantenimiento y los daños. No tiene razón.

■ Aceptamos que los demandantes no conocían la manera *exacta* en que el toro penetró hacia la carretera. Sin embargo, presentaron suficiente evidencia *circunstancial* para justificar la determinación de que el pobre estado de las vallas y la falta de avisos fueron las causas que propiciaron que el animal llegara hasta la vía de rodaje. A fin de cuentas, en materia de daños y perjuicios, nunca hemos exigido una exclusión de todas las posibles causas, como tampoco probar con exactitud matemática la del accidente. *Vda. de Delgado v. Boston Ins. Co.*, 99 D.P.R. 714, 725 (1971).

Así, aunque Díaz Larrauri atestó que la verja estaba en buenas condiciones cuando ocurrieron los hechos, también aclaró que al otro día del accidente se repararon ciento veinte (120) pies de verja. Varios días después *se repararon las verjas localizadas en el Km. 60.2*. Apéndice, págs. 11–12. Por su parte, Velázquez Grillo sometió en evidencia, para fines comparativos, unas fotos de las verjas tomadas en 1987, las cuales reflejaban la misma situación de deterioro que al ocurrir el accidente. Su testimonio no fue impugnado. Íd.

## V

Finalmente, hemos de aclarar que una determinación de responsabilidad al Estado bajo el Art. 404 del Código Político, *supra*, no impide la existencia de causas concurrentes. *Morales Muñoz v. Castro*, 85 D.P.R. 288 (1962).

■ El Art. 1805 del Código Civil, 31 L.P.R.A. sec.

5144,[3] le impone responsabilidad al dueño o al que se sirva de un animal por los daños que cause a terceros. Se trata de una responsabilidad absoluta, la cual no está fundada en culpa, sino en el mero carácter de dueño o poseedor del animal. *Rivera Pagán v. López Santiago*, 102 D.P.R. 400 (1974). La misma cesará cuando el daño sea causado por fuerza mayor o por la culpa del perjudicado. *Rivera Pérez v. Carlo Aymat*, 104 D.P.R. 693 (1976). "El concepto 'absoluto' en el contexto jurisprudencial del Art. 1805 meramente significa que no hay que probar negligencia, pero en nada impide imponerle responsabilidad en forma concurrente al co-causante de un daño producido en parte por un animal." *Rivera Pagán v. López Santiago*, supra, pág. 404.

En este caso no están presentes los elementos que exoneran de responsabilidad al dueño del animal. En consecuencia, la Autoridad y Velázquez Grillo son co-causantes *solidarios* del daño.[4]

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente y de conformidad. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión concurrente y de conformidad emitida por el Juez Asociado Señor Rebollo López.

Convenimos con lo expresado en la Opinión mayoritaria

---

[3] "El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido." 31 L.P.R.A. sec. 5144.

[4] No está bajo nuestra consideración la corrección del por ciento de negligencia fijado por la ilustrada sala sentenciadora.

emitida en el presente caso a los efectos de que la Autoridad de Carreteras de Puerto Rico debe responder por el accidente a que se refiere el presente recurso por cuanto la misma tiene "el deber general ... de mantener las carreteras públicas [(autopistas)] en buen estado y de tomar las medidas necesarias, de modo que las mismas no representen un peligro para los que transitan por ellas", (énfasis suprimido) opinión mayoritaria, pág. 120; deber y obligación resultante no solo por lo preceptuado por el Art. 404 del Código Político de Puerto Rico, 3 L.P.R.A. sec. 422, sino que, en especial, del hecho importante que en dichas autopistas se cobra un peaje a los automovilistas que transitan por las mismas.

Ahora bien, el voto de conformidad que le brindamos a la Opinión mayoritaria emitida está predicado en tres (3) importantes consideraciones, o condiciones, a saber:

(1) que en casos en que se pueda determinar adecuadamente quién es el dueño del predio de terreno de donde procedían, o pastaban a ciencia y paciencia de éste, los animales causantes del accidente —sea éste el dueño de los animales o no— dicha persona o corporación es también solidariamente responsable de los daños causados por dichos animales;

(2) que aun cuando es correcto el hecho de que no está ante nuestra consideración, por no haber sido planteado, la corrección de la proporción de negligencia que en el presente caso decretara el tribunal de instancia —esto es, 80% para el dueño del animal y 20% para la Autoridad de Carreteras— estimamos que dicha proporción es una correcta por cuanto no abrigamos duda de que la negligencia en que incurre el dueño del animal y, en los casos en que se pueda determinar, el dueño del predio en que pastaba el mismo, debe *siempre* ser una mucho mayor que la incurrida por la referida Autoridad, y

(3) que siempre estará accesible a los demandados en esta clase de casos la defensa referente a la negligencia en

que pueda haber incurrido la parte demandante perjudicada (exceso de velocidad, embriaguez, etc.) y las defensas provistas al Estado por el citado Art. 404 del Código Político de Puerto Rico.

Sujeto a estas consideraciones y condiciones, repetimos, es que suscribimos y endosamos la Opinión mayoritaria emitida en el presente caso.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton.

Limitaría el alcance de nuestro dictamen a los hechos particulares de este caso. Informada la Autoridad de Carreteras (en adelante Autoridad) "que las vallas existentes eran inadecuadas" en el área de la autopista en Salinas y que el ganado con frecuencia cruzaba la vía pública en ese sector, la Autoridad faltó a su deber de tomar las medidas correctivas pertinentes. Tampoco alertó a los conductores de la posible presencia de animales en esa parte de la autopista.

Sin embargo, no coincido con los pronunciamientos vertidos por la opinión mayoritaria a los efectos de que, al amparo del Art. 404 del Código Político, 3 L.P.R.A. sec. 422, la Autoridad tenía un deber de instalar verjas en toda la autopista porque "está ínsito en su obligación general de mantener seguras las vías ...". Opinión mayoritaria, pág. 120. Considerando que la distancia comprendida por las autopistas de la Autoridad es extensa, imponerle este deber a esa corporación pública es irrazonable y oneroso.

Por la razones anteriormente expresadas, confirmaría la sentencia recurrida.