Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V (ESPECIAL)

| JEAN DANIEL ETCHEVERS MUTIS<br><br>Apelada<br><br>v.<br><br>CONSEJO DE TITULARES COND. CONDADO ASTOR, UNIVERSAL INSURANCE COMPANY, FULANO DE TAL Y OTROS<br><br>Apelante | KLAN202400080 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.: SJ2019CV09224<br><br>Sobre: Ley de Condominios |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Comparece ante nosotros el Consejo de Titulares del Condominio Condado Astor (en adelante, Consejo de Titulares) y Universal Insurance Company (en adelante, Universal y en conjunto, los apelantes) mediante recurso de Apelación en el cual nos solicitan la revocación de la *Sentencia* emitida el 30 de junio de 2023 y notificada el 5 de julio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario). Por medio de dicho dictamen, el TPI declaró Ha Lugar la causa de acción presentada por Jean Daniel Etchevers Mutis (en adelante, señor Etchevers o el apelado) contra el Consejo, sentenciando y condenando a este último a un pago ascendiente a $173,983.29. [1]

---

[1] Según resuelto en la *Sentencia*, la partida concedida en favor del apelado se desglosa de la siguiente manera: (1) $87,031.81 por gastos de materiales y mano de obra incurridos en la preparación de las cuatro oficinas; (2) $72,200.00 por pérdida de rentas; (3) $4,800.00 por pérdida de mobiliarios; (4) $8,943.30 por cuotas de mantenimiento; (5) $966.18 de gastos legales por moratoria del préstamo hipotecarios; y (5) $5,000.00 por concepto de honorarios de abogado por temeridad, más las costas e intereses legales.

Número Identificador

SEN2024 _____

Evaluado el expediente ante nuestra consideración, por los fundamentos que a continuación expondremos, **confirmamos** la *Sentencia* apelada. Veamos.

## I.

El caso de epígrafe inició el 7 de septiembre de 2019 con la presentación de una *Demanda* instada por el señor Etchevers por infracción a la Ley de Condominios de 2003, 31 LPRA secs. 1291 *et seq.*, y por daños y perjuicios contra el Consejo de Titulares y Universal.  En síntesis, reclamó haber sufrido daños debido a las actuaciones u omisiones negligentes, la dejadez, el abandono o error de la Junta de Directores al no corregir a tiempo- tras el paso del Huracán María en el año 2017- las filtraciones provenientes de áreas comunes generales del condominio. Así, sostuvo que el Condominio, el Consejo de Titulares y Universal tienen la responsabilidad de pagar indemnización por los daños ocasionados, conforme a: (i) la póliza de cubierta de Directores y Oficiales; (ii) el artículo 1810 del Código Civil, 31 LPRA sec. 149, y (iii) el artículo 15(g) de la Ley de Condominios, 31 LPRA sec. 1291m, entre otras.[2]

El Consejo de Titulares y Universal contestaron la *Demanda*. Al así hacer, negaron responsabilidad por los daños reclamados y argumentaron que los daños alegados fueron provocados por fuerza mayor, es decir, por el paso de eventos naturales por Puerto Rico. Además, señalaron haber sido diligentes en el descargo de sus obligaciones e inclusive realizar trabajos de mitigación de daños consistentes en sellar parcialmente el área que el señor Etchevers alegó sufrió daños.

Durante el trámite del caso, el foro primario tuvo ante su atención varias controversias en cuanto al descubrimiento de prueba, el

---

[2] Destacamos que posteriormente en el caso, específicamente el 24 de marzo de 2022, y al amparo de lo resuelto por el Tribunal Supremo de Puerto Rico en el caso Consejo de Titulares v. MAPFRE, 208 DPR 1018 (2022), el apelado desistió voluntariamente con perjuicio de la causa de acción mediante la cual, a tenor con el artículo 27.164(4) del Código de Seguros, 26 LPRA Sec. 2716d, solicitaba que se obligara a la aseguradora Universal a reembolsarle los honorarios de abogado incurridos.

incumplimiento por parte de la parte apelante con varias órdenes del tribunal en cuanto al mismo, la imposición de sanciones por tal desobediencia, la admisión de ciertos requerimientos de admisiones, así como la presentación y denegatoria de una moción dispositiva sometida por la parte apelante. El juicio en el caso se celebró los días 28, 29, 30 y 31 de marzo de 2022. Allí, como prueba testifical del señor Etchevers, este sometió su testimonio, así como aquel del Dr. Omar Cruz Medina, ex presidente de la Junta de Directores del Consejo de Titulares y actual vocal de esta (Doctor Cruz). La parte apelante, por su parte, sometió la declaración del Doctor Cruz, del Sr. Rafael Menéndez Rivera, de la División Legal de Universal Insurance y de su perito, el Ing. Emilio Javier Solís San Miguel.[3]

Recibida la prueba testifical y documental, y adjudicada la credibilidad y el valor probatorio de la prueba, el TPI dictó la sentencia apelada. En su dictamen, el foro primario emitió 57 determinaciones de hechos. En virtud de estas, y al amparo del derecho aplicable allí citado, resolvió que el Consejo de Titulares y su aseguradora, Universal, respondían por los daños y perjuicios que el apelado sufrió a consecuencia de las filtraciones de la azotea del cuarto piso del Condominio, por ser el poseedor de hecho y titular de esa área común general voluntaria.[4] Al explicar su decisión, el TPI rechazó las distintas teorías legales del Consejo de Titulares mediante las cuales negaba responsabilidad. Asimismo, y a

---

[3] La parte apelante había anunciado como testigo al Sr. Miguel Calarza. Sin embargo, renunció al mismo con la anuencia del demandante.

[4] El TPI manifestó que la responsabilidad de la apelante surgía tanto al amparo del Artículo 1810 del Código Civil de 1930, del Artículo 15(g) de la Ley de Condominios, así como del Artículo 1802 del Código Civil de 1930. La aplicación de estas disposiciones legales a la causa de acción responde a que al momento en que ocurrieron los hechos sobre los que esta trata estos eran los estatutos vigentes relacionados a las controversias. Si bien discrepamos del reconocimiento simultáneo de una causa de acción bajo el Artículo 1810 y el Artículo 1802 del Código Civil, este formó parte del análisis y la discusión de las controversias y no de la parte dispositiva de la sentencia. El tribunal apelado no concedió partidas separadas para cada una de las disposiciones legales citadas. Por consiguiente, y dado que la revisión de una sentencia se da contra el resultado y no contra los fundamentos, Pueblo v. Pérez, 159 DPR 544 (2003), lo señalado no incide sobre la corrección del dictamen que revisamos.

tenor con los términos de la póliza de responsabilidad pública expedida por Universal en favor del Consejo de Titulares, concluyó que la aseguradora tenía el deber de indemnizar solidariamente al señor Etchevers por los daños reclamados al amparo de ambas disposiciones legales.

Además de lo anteriormente consignado, en la *Sentencia* el TPI concluyó que la parte apelante fue crasa e incuestionablemente temeraria. Tras así establecer, procedió a ordenar a la apelante a pagarle solidariamente al demandante las siguientes partidas:

a. $87,031.81 por gastos de materiales y mano de obra incurridos en la reparación de las cuatro (4) oficinas del lado Este del Local 3-A, incluyendo su participación en el pasillo;

b. $72,200.00 por pérdida de rentas;

c. $4,800.00 por pérdida de mobiliario;

d. $8,943.30 por cuotas de mantenimiento;

e. $966.18 de gastos legales por la moratoria del préstamo hipotecario; y,

f. $5,000.00 por concepto de honorarios de abogado por temeridad, más las costas e intereses legales.

Inconforme con lo resuelto, la parte apelante presentó una *Moción al amparo de la Regla 43.2 de Procedimiento Civil sobre solicitud de enmiendas a las determinaciones de hechos, así como determinaciones adicionales y bajo la Regla 47 de Procedimiento Civil de reconsideración.* En esta, propuso 72 determinaciones de hechos adicionales que, a su entendimiento, debían añadirse al dictamen emitido por el foro primario. Asimismo, argumentó la inaplicabilidad del Art. 1810 del Código Civil, así como la del Art. 15(g) de la Ley de Condominios de 2003, negó que el señor Etchevers hubiera establecido mediante prueba alguna la negligencia de la Junta de Directores del Condominio Astor, así como aquella del Consejo de Titulares. El 22 de diciembre de 2023, el TPI emitió *Resolución* mediante la que declaró No Ha Lugar este escrito.

Insatisfechos aún, los apelantes instaron el recurso de epígrafe en el que señalaron la comisión de los siguientes errores:

Primer Error

Erró el Honorable Tribunal de Instancia al denegar la Solicitud de Desestimación Parcial de la Reclamación bajo el Artículo 1810 del Código Civil de Puerto Rico y determinar respo[n]sabilidad bajo éste.

Segundo Error

Erró el Tribunal de Instancia al denegar la Solicitud de desestimación parcial de la reclamación bajo el Artículo 15(G) de la Ley de Condominios de Puerto Rico y determinar respo[n]sabilidad bajo éste.

Tercer Error

Erró el Tribunal de Instancia al no tomar en consideración los trabajos de mitigación realizados por el Condominio y determinar respo[n]sabilidad bajo el Artículo 1802 del Código Civil.

Cuarto Error

Erró el Tribunal de Instancia al dar por admitidos Requerimientos de Admisiones que fueron contestados debidamente y conforme a la Regla 33 de Procedimiento Civil e imponer por lo mismo, sanciones en la cantidad de $500 pagaderos tanto al demandante como al Tribunal.

Quinto Error

Erró el Tribunal de Instancia al permitir la prueba documental de los alegados gastos de reparación en su totalidad, incluyendo tablas no preparadas por el demandante, y recibos y cotizaciones tampoco preparadas pro éste; además de permitir recibos en original que no fueron producidos a la apelante antes del juicio y cuyas copias, entregadas y en SUMAC, estaban en blanco o ilegibles.

Sexto Error

Erró el Tribunal de Instancia al no aquilatar la prueba sobre los arrendatarios de las oficinas del Local 3 [ ] de acuerdo a la prueba documental sometida por el apelado y su testimonio.

Séptimo Error

Erró el Tribunal de Instancia al no hacer determinaciones de hechos adicionales bajo loa Regla 43.2 de Procedimiento Civil.

Octavo Error

Erró el Tribunal de Instancia no darle valor probatorio a la investigación y conclusión del perito de la apelante.

Noveno Error

Erró el Tribunal de Instancia al determinar que el costo de las unidades de aire acondicionado fue de $6,050, cuando compró 2 unidades para el lado Este y el Oeste, respectivamente.

Décimo Error

Erró el Tribunal de Instancia al determinar temeridad cuando la demanda contaba con prueba pericial y una investigación de la

reclamación presentada a Universal que concluían la falta de responsabilidad del Consejo del Condominio Condado Astor.

Undécimo Error

Erró el TPI de instancia al apreciar y aquilatar la prueba de forma objetiva e imparcial.

Tras los trámites de rigor, que incluyeron la autorización, tramitación y estipulación de la transcripción de la prueba oral, el 14 de marzo de 2024 los apelantes presentaron *Alegato Suplementario del Apelante*. El 5 de abril de 2024 el apelado sometió su *Alegato en Oposición a Apelación*. Así pues, con la comparecencia de las partes queda sometido el asunto y resolvemos.

**II.**

*-A-*

Es sabido que la tarea principal de los tribunales apelativos es examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. El desempeño de esta función revisora se basa en que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado ciertos según la prueba que le fue presentada. Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013). Así pues, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que las determinaciones de hechos que toma el foro primario a base de testimonio oral, "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". De igual manera, la Regla 110 de Evidencia, 32 LPRA Ap. VI dispone que, "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".

Por razón de lo consignado en el párrafo anterior, es norma reiterada que cuando se le solicita a un foro apelativo que revise cuestiones de

hechos, la apreciación de la prueba, en primera instancia, le corresponde al tribunal sentenciador ya que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla. Pueblo v. Acevedo Estrada, 150 DPR 84, 98-99 (2000); López Vicil v. ITT Intermedia, Inc., 142 DPR 857, 865 (1997). En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia. González Hernández v. González Hernández, 181 DPR 746, 776 (2011).

Asimismo, es norma fundamental hartamente conocida que, en nuestro ordenamiento jurídico, salvo evidencia de pasión, prejuicio, parcialidad o error manifiesto los foros revisores no intervendrán con la apreciación de la prueba, la adjudicación de credibilidad o la formulación de determinaciones de hechos por parte del Tribunal de Primera Instancia. TEC General Contractors v. AEE et als., 210 DPR 632 (2022), citando a Santiago Ortiz v. Real Legacy et al., 206 DPR 194, 219 (2021); Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Dávila Nieves v. Meléndez Marín, *supra*. Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio." Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 65 (2009).

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. Gómez Márquez et al. v. El Oriental, 203 DPR 783 (2020).[5] De ahí que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el

---

[5] Citando a Dávila Nieves v. Meléndez Marín, *supra.*

juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd*. Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos. *Íd*.

En cambio, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* Este estándar de revisión restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación. *Íd*. Diferencias de criterio jurídico no alcanzan ese estándar. *Íd.*

-B-

El Art. 1810 del Código Civil, 31 LPRA sec. 5149, dispone que "[e]l cabeza de familia que habita una casa o parte de ella es responsable por los daños causados por las cosas que se arrojaren o cayeren de la misma". En cuanto al citado artículo, el Tribunal Supremo de Puerto Rico resolvió en Berio v. Royal, 164 DPR 797 (2005) que la expresión "cabeza de familia" se refiere a que "sólo se impondr[á] responsabilidad al principal o al responsable de la vivienda, en vez de a todos los habitantes de ella o a aquel que de hecho ocasionó la caída de la cosa." *Íd*., a la pág. 801.

La responsabilidad impuesta en el Artículo 1810 es una objetiva. Incluye, dentro de su amplia cobertura, las situaciones que involucran filtraciones o caídas de líquidos en complejos de apartamentos. Ahora, lo anterior no impide que en una ley especial se incluya una disposición para responsabilizar a otra persona adicional a quien se considera como "cabeza de familia", con el propósito de repartir la responsabilidad entre los

cocausantes del daño. SLG Vázquez, Ibanez v. De Jesús, Vélez, 180 DPR 387 (2010).

Contrario al conocido Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141, en una reclamación bajo el discutido artículo, el perjudicado no tiene que probar el elemento de negligencia para su aplicación y consecuencias. Berio v. Royal, *supra*, a la pág. 801, citando a Carlos J. Irizarry Yunque, Responsabilidad Civil Extracontractual, 5ta Ed., 2003, pág. 602. No obstante, el perjudicado no está exento de probar el nexo causal entre la caída del objeto y que ello fue la causa que provocó los daños sufridos. Elba A.B.M. v. U.P.R., 125 DPR 294, 310 (1990). Además, la defensa de negligencia comparada puede ser considerada por el foro sentenciador, por lo que es posible descontar al responsable, la porción por la que debe responder otra persona. Berio v. Royal, *supra*, a la pág. 805; Dones Jiménez v. Autoridad de Carreteras, 130 DPR 116, 124-125 (1992).

De conformidad con lo anterior, si se configura una situación como la que anticipa el Artículo 1810 del Código Civil, *supra*, y no es de aplicación la Ley Núm. 104 de 25 de junio de 1958, según conocida como la Ley de Condominios de 2003, según enmendada, 31 LPRA sec. 1291 et seq., el único responsable para resarcir el daño lo será "el cabeza de familia". Con relación a la identidad del responsable, el Tribunal Supremo de Puerto Rico lo ha descrito como: "la persona a la que se le puede atribuir el control de la vivienda, aunque no hubiese sido ella quien arrojó o dejó caer la cosa." Berio v. Royal, *supra*, a las págs. 801-802. Véase, también, S.L.G. Vázquez-Ibañez v. De Jesús, Vélez, *supra*, a la pág. 400.

En cuanto a la controversia que plantea el presente caso, **cabe destacar que se ha resuelto que cuando ocurren daños debido a filtraciones o caídas de líquidos en apartamentos o viviendas por pisos, el artículo a invocarse no es el Artículo 1802 del Código Civil, supra, sino la responsabilidad objetiva dispuesta en el Artículo 1810 del Código**

**Civil,** *supra***.** <u>S.L.G. Vázquez-Ibañez v. De Jesús, Vélez</u>, *supra*, a las págs. 403-404.

**-C-**

Por su parte, el artículo 15 de la Ley 104 de 25 de junio de 1958, mejor conocida como "Ley de Condominios", vigente a la radicación de la *Demanda*, estableció unas reglas a regir el uso y disfrute de cada apartamiento sometido al estatuto. Estas son las siguientes:

(a) Cada apartamiento se dedicará únicamente al uso dispuesto para el mismo en la escritura a que se refiere el Artículo 2.

(b) Ningún ocupante del apartamiento producirá ruidos o molestias ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos.

(c) Los apartamientos no se usarán para fines contrarios a la ley, a la moral y a las buenas costumbres.

(d) Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad y mejoras de su apartamiento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación y seguridad, tan pronto sea necesario para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamiento vendrá obligado a permitir en su unidad las reparaciones o trabajos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamiento para su realización.

(e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del conjunto. Cuando una propuesta de cambio de la forma externa de la fachada, decoración de las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del conjunto, sobre un condominio con cuarenta (40) o más apartamientos, y con ningún titular poseyendo la mitad o más de éstos, sea sometida a votación del Consejo de Titulares será suficiente la aprobación de por lo menos el setenta y cinco porciento (75%) de todos los titulares, siempre que ningún titular opositor demuestre que los cambios o alteraciones resulten innecesarios y le afecten adversamente el valor tasable de su apartamiento. Para determinar necesidad se considerará el grado de obsolescencia arquitectónica, el tiempo y el costo de remodelación particular y general, y la proyección sobre la tasación de cada inmueble. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos de condominio.

Una vez las agencias concernidas emitan un aviso de huracán o tormenta, el uso de cualquier tipo de tormentera temporera o removible no constituirá alteración de la fachada. En cuanto a las permanentes, la Junta de Directores solicitará cotizaciones y alternativas de diseño, tipo y color específico y se las presentará

al Consejo de Titulares, que por votación mayoritaria decidirá las que se instalarán. Las tormenteras temporeras deberán removerse pasado el aviso de huracán o tormenta o luego de ocurrir el siniestro, salvo que el área protegida por ellas quede de tal forma averiada que éstas constituyan la única protección provisional.

Cuando a juicio de perito no se puedan reparar o sustituir los equipos o elementos originales del edificio que forman parte de su diseño arquitectónico, tales como ventanas, puertas, rejas u ornamentos, el Consejo de Titulares decidirá por voto mayoritario el tipo y diseño del equipo o elemento que sustituirá al original. Cualquier titular que interese sustituir tales elementos o equipo, tendrá que hacerlo conforme al tipo y diseño adoptado por el Consejo. La imposición a todos los titulares de efectuar la sustitución requerirá que se cumpla con los requisitos dispuestos en el Artículo 38(d) sobre obras de mejora.

(f) Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (f) del Artículo 38, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares.

(g) **Todo titular observará la diligencia debida en el uso del inmueble, y en sus relaciones con los demás titulares, y responderá ante éstos por las violaciones cometidas por sus familiares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título, sin perjuicio de las acciones directas que procedan contra dichas personas.** (Énfasis nuestro)

(h) Ningún titular u ocupante de una unidad podrá instalar o adherir objeto alguno en las paredes que pueda constituir un peligro para la seguridad de cualquier persona, de la propiedad comunal o la privada.

(i) Todo titular u ocupante cumplirá estrictamente con las disposiciones de administración que se consignen en esta ley, en la escritura o el Reglamento a que se refiere el Artículo 36.

(j) El adquirente de un apartamiento cuyo transmitente no sea el desarrollador, administrador interino o constituyente del régimen, acepta la condición manifiesta de los elementos comunes del condominio en la forma en que éstos se encuentren físicamente al momento de adquirir, y se subroga en la posición del transmitente en cuanto a los derechos que tenga sobre iniciar cualquier acción en la que se impugne el cambio por violación a esta Ley, a la escritura matriz o al reglamento del condominio. A este adquirente se le atribuirá el conocimiento de los cambios manifiestos que existan en el inmueble para todos los efectos de la tercería registral.

El discutido Artículo, claramente establece que la infracción de estas reglas dará lugar al ejercicio de la acción de daños y perjuicios por "aquel

titular u ocupante que resulte afectado", además de cualquier otra acción que en derecho le corresponda. *Véase,* 31 LPRA, Sec. 1291m.

**-III-**

Mediante la discusión de sus distintos señalamientos de error, los apelantes cuestionan la denegatoria por parte del foro primario de desestimar la causa de acción presentada por el apelado, impugnan la negativa del TPI de considerar los trabajos de mitigación que el Condominio realizó, afirman que fue un error el dar por admitidos ciertos requerimientos de admisiones que fueron contestados debidamente por el Consejo de Titulares y ponen entredicho el ejercicio de apreciación de prueba efectuado por el juzgador de hechos, así como el valor probatorio que le adjudicó a la evidencia desfilada durante el juicio.

A tales efectos, al discutir conjuntamente sus tres primeros señalamientos de error, exponen en que la jurisprudencia interpretativa del Artículo 15(g) de la anterior Ley de Condominios, *supra,* así como aquella que interpreta el Artículo 1810 del Código Civil trata de la responsabilidad que tienen los dueños de alguna vivienda o apartamento de donde provengan filtraciones, mas no a aquellas que pueda ocurrir en la azotea de un condominio o edificio sujeto a propiedad horizontal.

Al oponerse a la apelación el señor Etchevers señala que los planteamientos levantados por los apelantes pretenden establecer un eximente de responsabilidad carente de autoridad jurídica en apoyo. A tales efectos, expone que en nuestro ordenamiento jurídico no se ha reconocido que el acto de llevar a cabo medidas de mitigación sea un eximente de responsabilidad. Independientemente de ello, indica que durante el juicio se demostró que por 19 meses el Consejo de Titulares impermeabilizó la azotea por áreas con el conocimiento de que dicha medida no funcionaba y de que las filtraciones continuaban ocasionándole daños a su propiedad.

Sobre el particular, al resolver el caso, el TPI expuso que para analizar la alegación del Consejo de Titulares y su aplicación, debía considerar que toda interpretación estatutaria que conduzca a resultados irrazonables o absurdos o que derroten los propósitos de la ley interpretada deben ser rechazados.[6] Así, a manera de ejemplo, señaló que algunos de los resultados que la interpretación propuesta del Consejo de Titulares podría tener son:

a) El dueño de un apartamento tipo "penthouse" que conforme a la escritura matriz tiene el uso y disfrute exclusivo y obligación de mantener la azotea, le respondería al dueño de otro apartamento —bajo los artículos 1810 del Código Civil y 15(g) de la Ley de Condominios— por daños por filtraciones provenientes del "penthouse", excepto si éstas provienen de su azotea.

b) Los titulares de locales comerciales de un condominio o de un edificio comercial que no está sometido al régimen de propiedad horizontal estarían inmunes a causas de acción bajo los referidos artículos por los daños ocasionados por filtraciones o cosas que se caen o arrojan de dichas propiedades comerciales, debido a que éstas no son viviendas. Sin embargo, si se tratara de una residencia, el dueño sí sería responsable bajo el artículo 1810, excepto si la cosa se cae o arroja desde la azotea, porque la azotea no es una vivienda.

c) Si de un edificio comercial –que no es condominio– o de la azotea de un condominio –sea elemento común general o limitado– se cae una antena satélite y mata a una persona, el dueño del edificio o de la azotea estarían inmunes de causas de acción bajo el artículo 1810 del Código Civil, porque "la azotea no es una vivienda". Sin embargo, si ese mismo accidente ocurre del balcón de un apartamento, los perjudicados sí tendrían una causa de acción bajo el artículo 1810 y el 15(g) de la Ley de Condominios.

Basándose en estos ejemplos, el foro primario concluyó que la interpretación brindada por el Consejo de Titulares a las disposiciones de los artículos 1810 del Código Civil de 1930 y 15(g) de la Ley de Condominios producía resultados irrazonables o absurdos. Expuso que, de acogerse tal interpretación, en los escenarios arriba enumerados los perjudicados

---

[6] Véase *Sentencia* al citar el Artículo 19 del Código Civil de 1930 y jurisprudencia mencionada; página 918 del Apéndice.

tendrían que basar su reclamación de daños al amparo del artículo 1802 del Código Civil de 1930 y probar que el dueño incurrió en negligencia.[7]

Según el TPI, ello derrotaría el propósito del artículo 1810 del mismo cuerpo para que en tales casos se establezca responsabilidad absoluta y, particularmente, el deber de fiducia del consejo hacia los titulares, razón para la cual fue creado. Por razón de ello- y en especial consideración a que el Consejo de Titulares es el **dueño** de los elementos comunes generales de un condominio- el TPI concluyó que no existía base racional alguna que sustentara la interpretación del Consejo de Titulares y la sugerida inmunidad que esta implicaba, ni política pública que justificara establecerla. Es al realizar este análisis que el foro primario concluyó que el Consejo de Titulares respondía de manera absoluta debiendo indemnizar al apelado por los daños que sufrió por las filtraciones provenientes de la azotea; área común general del Condominio.

Consideramos que el análisis efectuado por el foro primario al dilucidar la aplicabilidad de las disposiciones legales arriba mencionadas fue uno adecuado. Estimamos también que los argumentos levantados por el Consejo de Titulares para atacar la decisión son insuficientes para derrotar la razonabilidad y corrección del estudio del TPI. En contrario, sus planteamientos se centraron en que la jurisprudencia interpretativa de las disposiciones legales antes mencionadas trata de la responsabilidad de una "vivienda" o "apartamento" de donde provienen las filtraciones que ocasionan daño y no de filtraciones de azoteas. Los apelantes no atendieron directamente- y por consiguiente no rebatieron- el avalúo del tribunal. Particularmente, la conclusión de que la interpretación de las disposiciones legales propuestas por el Consejo de Titulares en su moción de

---

[7] Inclusive, en la página 27 de la *Sentencia,* el TPI señaló que en su discusión el Consejo de Titulares guardó silencio y no estableció quién sería el responsable de los daños ocasionados al señor Etchevers por las filtraciones provenientes de la azotea común general.

desestimación producía efectos irrazonables y absurdos, por lo que la solicitud de desestimación que hizo en su día era improcedente. Siendo ello así, resolvemos que los primeros 3 errores señalados no fueron cometidos.

Igual resolución tomamos en cuanto al cuarto señalamiento de error. Allí, los apelantes aseveran que se equivocó el TPI al dar por admitidos ciertos requerimientos de admisiones que fueron debidamente contestados por el Consejo de Titulares e imponerle $500.00 de sanciones. En la discusión de su error, no señalan la determinación específica que recoge el error señalado. No obstante, advertimos que la decisión en la que se atribuye el error trata de la *Resolución* emitida y notificada en el caso el 23 de marzo de 2022. En esta, se dieron por admitidos ciertos requerimientos. De la misma forma, notamos que los requerimientos admitidos están incluidos en la determinación de hechos número 44 de la *Sentencia*.

Más allá de efectuar el señalamiento específico, los apelantes se limitan a exponer el derecho aplicable que estiman pertinente a la controversia; a señalar que los requerimientos de admisiones no fueron utilizados durante el juicio; a manifestar que el señor Etchevers no objetó su prueba bajo el fundamento de que existían unas admisiones; y a alegar que las admisiones tácitas fueron para todos los fines retiradas o enmendadas, pues el apelado pasó toda su prueba en el caso.

Los superfluos argumentos de los apelantes pasan por alto que la sentencia apelada, al detallar el tracto procesal, destaca la falta de diligencia observada por el Consejo de Titulares durante el trámite del caso en cumplir con las órdenes del tribunal y con las Reglas de Procedimiento Civil relativas a los requerimientos de admisiones. Estos, ignoran que fue precisamente la dejadez y desidia de su parte que motivó la admisión de los requerimientos. La Regla 33 de Procedimiento Civil, *supra,* es clara en cuanto a la consecuencia de no contestar adecuadamente los requerimientos de admisiones. Los someros argumentos de los apelantes

en su cuarto señalamiento de error son insuficientes para persuadirnos a resolver que el TPI abusó de su discreción o que cometió error manifiesto al dar por admitidos los requerimientos de admisiones y coincidir con su apreciación de error. Las razones brindadas en la apelación no derrotan los hechos admitidos. Por tanto, concluimos que el cuarto error no fue cometido.

Tal desenlace ocurre también en cuanto al quinto y sexto señalamiento de error discutido por los apelantes al estimar que ninguno de los planteamientos que allí levantan son suficiente en derecho para rebatir las distintas determinaciones impugnadas en estos. Tampoco lo son para ubicarnos en posición de sustituir el ejercicio de valoración de la prueba efectuada por el foro primario. Veamos.

En su quinto señalamiento de error, de forma limitada, los apelantes catalogan de errada la admisión de prueba documental de ciertos alegados gastos de reparación del señor Etchevers puesto que no fue autenticada conforme a derecho. De igual forma, cuestionan la admisibilidad durante el juicio de algunos documentos producidos en ese momento en original, pues las copias que le fueron producidas y se encontraban en el expediente digital, estaban en blanco o era ilegibles. En apoyo a esta contención, en su alegato suplementario resumen algunas porciones de la prueba testifical y señalan las páginas de la transcripción de las que surgen las declaraciones resumidas.

De otra parte, en la discusión conjunta de 5 de sus últimos 6 señalamientos de error, los apelantes cuestionan la apreciación de la prueba efectuada por el foro primario, el valor probatorio que le adjudicó al testimonio del señor Etchevers y la prueba documental que este sometió, así como la valorización de los daños decretada. Por último, al discutir su octavo señalamiento de error, los apelantes defienden la declaración de su perito frente al poco valor que este le mereció al tribunal.

Previo a atender directamente estos planteamientos, estimamos importante reproducir una porción de la parte dispositiva de la *Sentencia*, y así procedemos a hacer.

> El testimonio del Ing. Emilio Solís, perito de los demandados, fue insuficiente para controvertir la prueba antes mencionada, debido a que, según admitió durante su contrainterrogatorio: (a) Inspeccionó las aludidas cuatro (4) oficinas el 16 de septiembre de 2020, aproximadamente treinta y cuatro (34) meses después de que el Demandante terminó de repararlas por primera vez a finales de octubre de 2017; (b) Durante su inspección no levantó los plafones acústicos, para observar si había huellas de filtraciones y su magnitud; y, (c) Su conocimiento sobre el estado en que estaban estas oficinas entre septiembre de 2017 y enero de 2019, lo obtuvo observando unas fotos que le proveyeron, pero admitió que éstas no le permiten apreciar la extensión de los daños por filtraciones de agua, ni en cuáles de las cuatro oficinas ocurrieron los daños, ni como quedaron estas oficinas cuando el Demandante terminó de repararlas a finales de octubre de 2017.
>
> Sobre el particular, el ingeniero Solís testificó que de su examen de las fotos de la azotea pudo concluir que el material impermeabilizante de la azotea se desprendió como consecuencia del Huracán María; y, que esto ocasionó filtraciones en el Local 3-A, pero admitió que no puede precisar si las filtraciones ocurrieron en las referidas cuatro (4) oficinas. Esta limitación en su opinión pericial la confirmó durante el contrainterrogatorio sobre las fotos incluidas en el expediente de reclamación, el cual fue una de las bases de su opinión pericial, ya que no pudo precisar si los empozamientos de agua en la azotea son del lado Este u Oeste del Condominio.
>
> El testimonio del Demandante estableció la autenticidad de los Exhibit 33-A, B y C, en cumplimiento con la Regla 901 (A) de Evidencia, y su admisibilidad como récord de negocio, bajo la Regla 805 (F) de Evidencia. Conforme a dichos Exhibits, el Demandante valoró su reclamación en la suma de $284,451.64, por concepto de las siguientes partidas: pérdida de ingreso por concepto de rentas de las cuatro oficinas; pérdida de mobiliario; participación correspondiente a las cuatro oficinas, incluyendo su participación proporcional en el pasillo, en las cuotas de mantenimiento pagadas al Consejo de Titulares desde octubre de 2017 hasta el 31 de mayo de 2019; participación correspondiente a las cuatro oficinas, incluyendo su participación proporcional en el pasillo, en los gastos legales incurridos en moratoria de préstamo hipotecario; compra de materiales para reparar las cuatro oficinas, incluyendo el pasillo; y, mano de obra para reparar las cuatro oficinas, incluyendo el pasillo.

Es harto conocido que en nuestro ordenamiento jurídico si una parte entiende que el tribunal admitió erróneamente evidencia debe, conforme a la Regla 104 de Evidencia, presentar una objeción oportuna, específica y correcta. Regla 104 de Evidencia, 32 LPRA Ap. VI R. 104. Igual de sabido es que como regla general, los tribunales apelativos no revocarán una

sentencia por admisión errónea de evidencia, a menos que el error haya sido "un factor decisivo o sustancial en la sentencia emitida". Regla 105 de Evidencia, 32 LPRA Ap. VI R. 105.

Una evaluación de la totalidad de la transcripción del juicio nos lleva a concluir que el error de admisión imputado en el quinto señalamiento no fue cometido. Si bien las instancias citadas por los apelantes sugieren la deficiencia probatoria señalada, sus limitados planteamientos no consideran otras en las que el señor Etchevers declara sobre la preparación del documento, los pormenores de las facturas suplidas y la razón por la que estas tienen como emisor de pago distintas entidades corporativas, más son sobre el mismo asunto.[8]

Como se aprecia de la porción transcrita más arriba, es precisamente en virtud de dicho testimonio- el que no fue rebatido por los apelantes- que el foro primario estimó establecida la autenticidad de los documentos admitidos. Los argumentos provistos por los apelantes de ninguna manera derrotan tal admisibilidad, ni establecen que la admisión errónea señalada haya sido un factor decisivo o sustancial en la sentencia emitida, de manera que debamos intervenir con ella.

Similar inhibición nos motiva los argumentos que los apelantes levantan para atacar la credibilidad y el valor probatorio que el juzgador de los hechos le atribuyó a la prueba del señor Etchevers. Más allá de intentar cuestionar la partida de pérdida de rentas impugnada al discutir su sexto error señalado, los apelantes no atienden ni argumentan los asuntos particulares levantados en sus señalamientos de error séptimo, noveno, décimo y undécimo.[9] Por el contrario, sólo afirman que tenemos la prueba

---

[8] Véase págs. 44-53 de la transcripción de la vista del 28 de marzo de 2022 y pág. 122 de la transcripción de la vista del 29 de marzo de 2022.

[9] Los errores levantados y no discutidos en el recurso de apelación son los siguientes: séptimo error en el que se cuestionó la negativa del TPI de incluir determinaciones de hechos adicionales; noveno error mediante el que se impugnaba el costo de ciertas unidades de aire acondicionado; décimo error en el que se debatió la determinación de temeridad alcanzada y el undécimo error debatiendo la apreciación de prueba. La breve discusión relativa al sexto señalamiento de error que hacen los apelantes se limita a

documental ante nos y que al ir sobre la transcripción del juicio podremos apreciar que la sentencia apelada no se fundamenta con la prueba desfilada.

El alegato suplementario de los apelantes en su mayoría es un resumen de algunas partes del testimonio que resultan convenientes a su postura. Los argumentos específicos allí levantados sobre los errores señalados son superficiales o meramente repetitivos. Más aún, la deficiencia probatoria que los apelantes sí argumentan en su alegato suplementario supone que la causa de acción del apelado requiere como elemento la demostración de negligencia. Obvian, así pues, que la causa de acción reconocida por el foro recurrido bajo la Ley de Condominios y de forma supletoria, aquella contenida en el artículo 1810 del Código Civil de 1930 no exige que se pruebe negligencia.

Dada la norma de deferencia discutida en el inciso II de esta *Sentencia*, los apelantes son los encargados de señalar y demostrar la base para la intervención apelativa. S.L.G. Rivera Carrasquillo v. A.A.A., 177 DPR 345, 356 (2009), citando a Pueblo v. Cabán Torres, 117 DPR 645, 648 (1986). Examinados los distintos argumentos que los apelantes levantan al reclamar nuestra intervención con la apreciación de la prueba realizada por el foro primario, concluimos que estos no logran derrotar la deferencia que merece la apreciación efectuada por el TPI en el caso de autos y el valor probatorio que esta le atribuyó a la evidencia documental y testifical desfilada durante el juicio.[10]

**-IV-**

---

exponer que no hubo la perdida de ingreso resuelta, puesto que los inquilinos del señor Etchevers se relocalizaron a otras oficinas que estaban desocupadas. Sin embargo, tal somero argumento no considera que durante su testimonio el apelado aclaró que su reclamación descansaba en que, al ser tales inquilinos relocalizados a unas oficinas desocupadas, las oficinas que estos habían ocupado no pudieron alquilarse debido a que se vieron afectadas por las constantes filtraciones. Véase, Transcripción de vista de 29 de marzo de 2022, págs. 129-131.

[10] Es precisamente el respeto que merece el ejercicio evaluativo del foro primario que igualmente fallido estimamos su intento de derrotar la decisión apelada mediante su octavo señalamiento de error. En la discusión final de este señalamiento, aunque reconocen que los tribunales no están obligados a adoptar el criterio de un perito, basándose en que la determinación alcanzada es contraria al testimonio del Ing. Emilio Solís los apelantes discuten que constituyó un error del TPI haber despachado la declaración del ingeniero.

Por los fundamentos antes enunciados, confirmamos la *Sentencia* emitida el 30 de junio de 2023 y notificada el 5 de julio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan en el caso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones