*In re* José E. Moreno Cortés.

*Número:* AB-2002-57      *Resuelto:* 20 de mayo de 2003

*Roberto J. Sánchez*, procurador general, *Vanessa Lugo Flores*, subprocuradora general, *Noemí Rivera de León*, procuradora general auxiliar, y *Héctor Clemente Delgado*, subprocurador general interino; *Ruth Fonseca Benítez*, directora regional del Departamento de Asuntos del Consumidor; *José E. Moreno Cortés, pro se; Carlos A. Velázquez Ramírez, pro se.*

PER CURIAM: El 7 de noviembre de 2002 el Procurador General nos rindió un informe relacionado con una sentencia que emitió el Tribunal de Circuito de Apelaciones (Panel Regional VI) (en adelante Tribunal de Circuito), el 28 de febrero de 2002, en el caso *Ramón Dieppa Rodríguez v. Reliable Financial Services, Inc.*, KLRA01–00788.

Esa sentencia surge de la revisión administrativa de una resolución que emitió el Departamento de Asuntos del Consumidor (en adelante D.A.Co.) relacionada con un contrato de compraventa de un vehículo que adquirió el Sr. Ramón Dieppa Rodríguez en el Centro Auto Motores Corp. (en adelante Centro Auto). Seis meses después de haber adquirido el vehículo, el señor Dieppa Rodríguez presentó una querella ante D.A.Co. contra Centro Auto y Reliable Financial Services. Alegó que había tenido múltiples inconvenientes, no atribuibles a él, para poder inscribir el vehículo a su nombre y que se le otorgara la correspondiente licencia. Solicitó la cancelación del contrato de compraventa y la devolución de lo pagado.

Luego de una serie de trámites procesales, se celebró una vista administrativa ante el juez administrativo José E. Moreno Cortés. El licenciado Ruiz Cabán, abogado de Centro Auto, relató ante el Tribunal de Circuito que en una ocasión coincidió con el Lcdo. Carlos A. Velázquez Ramírez, abogado del señor Dieppa Rodríguez, y que al preguntarle si le habían notificado la resolución de D.A.Co. en el caso, éste le contestó que con toda probabilidad iba a demorarse varios meses, ya que él había entrado en negociaciones con el licenciado Moreno Cortés, el Juez Administrativo en el caso, para que trabajaran juntos en sus oficinas. Manifestó que entendía que el licenciado Moreno Cortés no iba a emitir la resolución del caso.

El 7 de noviembre de 2001, D.A.Co. emitió la resolución del caso. Ésta la suscribió el licenciado Moreno Cortés como Juez Administrativo. También aparecía firmando la Lcda. Ruth Fonseca Benítez, directora de la Oficina Regional de Caguas. Además, aparecía el nombre del Lcdo. Fernando L. Torres Ramírez, secretario del D.A.Co., aunque no firmaba la resolución. En esta resolución se concedieron varios remedios al querellante señor Dieppa Rodríguez.

Al momento en que se emitió la resolución y se presentó el recurso de revisión ante el Tribunal de Circuito, el licen-

ciado Moreno Cortés —el ex Juez Administrativo— se encontraba trabajando en las oficinas del licenciado Velázquez Ramírez, abogado del señor Dieppa Rodríguez. Insatisfecho con este dictamen, Centro Auto recurrió ante el Tribunal de Circuito y planteó como único error el siguiente:

> Erró el Juez Administrativo José E. Moreno Cortés al no inhibirse de emitir la Resolución cuya revisión aquí se solicita y así evitar la evidente y grave apariencia de conflicto de intereses, pues el Juez Administrativo había iniciado conversaciones con el abogado de la parte querellante para incorporarse a trabajar junto a él desde sus oficinas en Caguas.

Finalmente, el Tribunal de Circuito revocó la resolución de D.A.Co. y devolvió el caso al foro administrativo para que celebrara una nueva vista, y nos refirió la sentencia para la acción que estimásemos pertinente respecto a la conducta profesional de los licenciados Moreno Cortés y Velázquez Ramírez.

Con relación a este asunto, indicó el licenciado Velázquez Ramírez que se enteró que el entonces juez administrativo Moreno Cortés pensaba renunciar a D.A.Co. y que por eso le ofreció que se fuera a trabajar con él, ya que en sus oficinas necesitaba un abogado con experiencia en vistas administrativas, especialmente en D.A.Co. El 29 ó 30 de octubre de 2001, el licenciado Moreno Cortés aceptó la oferta y acordaron que comenzaría a trabajar en las oficinas del licenciado Velázquez Ramírez el 19 de noviembre de 2001.

El 23 de noviembre, el licenciado Velázquez Ramírez recibió la Resolución de D.A.Co., la cual se emitió el 7 de noviembre y se notificó el 20 de ese mismo mes. Indicó el licenciado Velázquez Ramírez que le preguntó al licenciado Moreno Cortés

> ... por qué había firmado la resolución si ya había decidido que iba a trabajar con él y el Lic. Moreno [Cortés] le respondió que él sólo había preparado un proyecto de resolución, según se lo

había ordenado la directora de la Oficina después de ésta haber tenido el expediente y las cintas grabadas del caso en su oficina por un periodo de varias semanas.[1]

Continuó explicando que entendió que la licenciada Fonseca Benítez estuvo de acuerdo con el proyecto de resolución luego de leer el expediente y escuchar las grabaciones, por lo que procedió a firmarlo y notificarlo.

El licenciado Moreno Cortés, por su parte, declaró que ya para octubre de 2001 había considerado renunciar a su trabajo en D.A.Co. Por esto solicitó traslado a la Oficina Regional de Arecibo, para estar más cerca de su familia, y se lo habían denegado. Indicó que él conoce al licenciado Velázquez Ramírez, ya que éste trabajó en D.A.Co. durante el tiempo en que él fue Director Regional. Expresó que el 9 de octubre de 2001 el licenciado Velázquez Ramírez se enteró que él había presentado su renuncia, y fue entonces que le hizo un acercamiento para que se fuera a trabajar con él a sus oficinas.

Alega que ese mismo día consultó con la Directora Regional, licenciada Fonseca Benítez, sobre este asunto, ya que tenía tres expedientes sometidos y pendientes de resolución en casos en los cuales el licenciado Velázquez Ramírez era el abogado de una de las partes. La licenciada Fonseca Benítez le dijo que iba a evaluar la situación. Al día siguiente ésta le envió un memorando en el cual condicionaba referir su renuncia al trámite administrativo correspondiente a que él sometiese un inventario "con lujo de detalles" sobre los casos que tenía asignados, e informase el trámite y el *status* de los casos en que intervino el licenciado Velázquez Ramírez. En este memorando, en letras ennegrecidas y con relación a estos casos, se decía:

[En] donde se haya celebrado vista administrativa y no se haya emitido resolución, el expediente íntegro me será entre-

---

[1] Véase Informe del Procurador General.

gado de inmediato, sin que medie ninguna otra acción de su parte.

El licenciado Moreno Cortés procedió a entregar los expedientes. Continuó aseverando que faltando una semana para finalizar sus labores en D.A.Co., la Sra. Cándida Cintrón, secretaria de la licenciada Fonseca Benítez, por orden de ésta, le devolvió los expedientes y le dijo que antes de finalizar sus labores allí tenía que preparar proyectos de resoluciones en los casos.

Luego de escuchar las grabaciones y evaluar la prueba documental, preparó los proyectos de resolución. Alega que ésta fue la última vez que tuvo contacto con los expedientes. *En cuanto a haber firmado las resoluciones, alega que él sólo cumplió con las órdenes de la Directora Regional, que solamente las redactó y firmó según el trámite administrativo, y las sometió para que la Agencia las evaluara.*

Con relación a la conducta profesional del licenciado Velázquez Ramírez, estamos de acuerdo con el Procurador General que de los hechos antes expuestos no surge que haya incurrido en conducta antiética. También estamos de acuerdo con el Procurador General en cuanto a que tan pronto el licenciado Moreno Cortés recibió la oferta de trabajo del licenciado Velázquez Ramírez y consideró la posibilidad de aceptarla, era *su deber ético inhibirse* en los casos en que el licenciado Velázquez Ramírez representara a una de las partes.

Con lo que no podemos estar de acuerdo con el Procurador General es con su conclusión de que como el licenciado Moreno Cortés "se limitó a seguir las órdenes de su superior ... no encontr[ó] que [hubiera] incurrido en violación ética alguna".([2]) Entendió el Procurador

*... que el no haber solicitado la inhibición en los casos en los que intervino el licenciado Vázquez [Ramírez], fue producto de*

---

([2]) Véase Informe del Procurador General, pág. 9.

*un error de juicio,* no intencional, por parte del [licenciado Moreno Cortés] al [éste] creer de buena f[e], *que al cumplir con las instrucciones de su jefe, se evitaría incurrir en cualquier apariencia de conducta impropia.* (Énfasis suplido.)[3]

■ Este caso nos permite analizar la conducta profesional de un abogado que como funcionario público lleva a cabo actividades cuasijudiciales al adjudicar controversias en una agencia administrativa —D.A.Co.— como Juez Administrativo. Éstos son los encargados de mantener la fe de los ciudadanos en la justicia que imparte esta agencia especializada. Los Jueces Administrativos tienen que ser concientes de la delicada labor que ejercen de impartir justicia y velar por que sus actuaciones siempre respondan a las normas de conducta que estimulen el respeto y la confianza del Pueblo en la función que llevan a cabo. Al igual que un juez que lleva su ministerio en la Rama Judicial, el Juez Administrativo, al entender en una controversia, tiene que ser prudente, sereno, imparcial y cuidadoso; esforzándose al máximo de su capacidad para evitar hasta la apariencia de conducta impropia, aunque al así hacer conlleve sacrificios personales. Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

■ *No cabe la menor duda que la imparcialidad en el ejercicio de sus funciones es una de las características esenciales del Juez Administrativo. Cualquier actuación que proyecte visos de parcialidad o arbitrariedad, o la apariencia de conducta impropia, afecta su imagen y la fe del Pueblo en este sistema paralelo de impartir justicia y resolver controversias. Además, subvierte la fe de la ciudadanía en un importante sector de las instituciones que tienen a su cargo la pacífica solución de los conflictos: las agencias administrativas.* El ejercicio de la práctica de la profesión de abogado, en este caso como Juez Administrativo, re-

---

[3] Íd.

quiere en todo momento celo, cuidado y prudencia. *In re Rodríguez Torres*, 104 D.P.R. 104, 758, 765 (1976).

■ Cabe señalar, que *la responsabilidad de un abogado de cumplir con las normas de ética profesional es personal e indelegable. El abogado está obligado a cumplir celosamente con este deber. No constituye excusa para su incumplimiento con el deber ético-profesional decir que siguió órdenes de su jefe o que cumplió con los deseos de un cliente.*

■ En la situación ante nuestra consideración, tan pronto el licenciado Moreno Cortés comenzó a hablar con o consideró la posibilidad de entrar en conversaciones con el licenciado Velázquez Ramírez para ir a trabajar a su oficina, debió inhibirse en todos los casos en que Velázquez Ramírez representara a una de las partes. También tenía el deber de informar esta situación al abogado de las otras partes y a sus jefes. El Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, le exige a los miembros de la profesión legal que sus relaciones con sus compañeros sean sinceras y honradas. Bajo las circunstancias de este caso, la inhibición del licenciado Moreno Cortés no podía depender de una autorización de sus jefes.

Los hechos antes expuestos, sin embargo, no reflejan que la conducta del licenciado Moreno Cortés fuese intencional o motivada por lucro personal. Siendo ésta la primera vez que confrontamos una situación de esta naturaleza, limitaremos la sanción disciplinaria a una censura y un apercibimiento de que una conducta similar en el futuro conllevará medidas disciplinarias más severas.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Hernández Denton disintió sin opinión escrita.