ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **OSVALDO ACEVEDO y OTROS**<br><br>Recurrentes<br><br>v.<br><br>**AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN**<br><br>Recurrido | KLRA202400364 | **REVISIÓN** procedente de la **Autoridad de Carreteras y Transportación**<br><br>Caso Núm.: **1994-ACT-013**<br><br>Sobre: Reclamación del Pago de Horas Extras |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de octubre de 2024.

Comparecen ante nos, mediante *Recurso de Revisión Judicial,* ciento treinta y ocho (138) empleados y exempleados de la Autoridad de Carreteras y Transportación (ACT) y sus representantes (en conjunto, Recurrentes) y nos solicitan que revisemos la *Resolución Final Parcial y Orden* emitida el 8 de abril de 2024, por la Junta de Apelaciones de la ACT (Junta de Apelaciones).[1] Mediante la referida determinación, la Junta de Apelaciones ordenó el cierre y archivo, con perjuicio, del caso para veintiuno (21) de los Recurrentes.

Por las razones que discutimos a continuación, revocamos la determinación de la Junta de Apelaciones y devolvemos el caso para la continuación de los procedimientos.

---

[1] Apéndice de *Recurso de Revisión Judicial,* Anejo I, págs. 1-12. Notificada y archivada en autos el 8 de abril de 2024.

Número Identificador
SEN2024 _____

**I.**

El 4 de marzo de 1994, los Recurrentes presentaron una *Apelación* ante la Junta de Apelaciones de la ACT, mediante la que solicitaron que se les compense por las horas extras trabajadas desde el mes de marzo de 1984 hasta la fecha de la presentación del recurso.[2] En síntesis, alegaron que los empleados Recurrentes habían trabajado ocho (8) horas por día cuando el día laboral era de siete horas y media (7.5). Debido a esto, solicitaron el pago por la media hora (0.5) trabajada en exceso de su jornada laboral a razón de doble pago, conforme a la Sección 17.5 del Reglamento de Personal de la Autoridad vigente para aquel año. Según se desprende del expediente, pasados aproximadamente diecinueve años, la ACT no había contestado la apelación.

Tras varios trámites procesales, incluyendo la paralización de los procedimientos, el 3 de noviembre de 2015, la Junta de Apelaciones celebró una vista en su fondo, a la que sólo comparecieron veintinueve (29) Recurrentes. En consecuencia, el 28 de enero de 2016, la Junta de Apelaciones dictó una *Resolución Final Parcial* en la que desestimó la causa de sesenta y seis (66) de los Recurrentes por no haber comparecido a la vista en su fondo.[3] La representación legal de los Recurrentes alegó que sus incomparecencias fueron debidas al lapso entre la radicación de la *Apelación* y de la vista señalada, así como la realidad de que un grupo sustancial de los Recurrentes eran retirados, vivían alejados del área metropolitana o habían fallecido, además, del poco tiempo concedido para localizarlos. Mediante *Sentencia* dictada el 28 de febrero de 2017, un panel hermano revocó aquella determinación, responsabilizando, en parte, a la conducta de la ACT, que a pesar de haber transcurrido más de "diecinueve años de haberse radicado

---

[2] *Íd.*, Anejo III, págs. 14-18.
[3] *Íd.*, Anejo VII, págs. 28-32.

la apelación no había contestado la misma ni había cumplido con otras órdenes de la Junta".[4]

Tras varios trámites procesales, el 22 de septiembre de 2022, la ACT presentó una *Moción en Cumplimiento de Orden*,[5] en la que solicitó la desestimación de las causas de acción de cuarenta y tres (43) Recurrentes por abandono y dejadez crasa de sus causas de acción.[6] Así las cosas, el 8 de abril de 2024, la Junta de Apelaciones dictó la *Resolución Final Parcial y Orden* de la cual se recurre.[7] Mediante la misma, la Junta desestimó, con perjuicio, las causas de acción de veintisiete (27) Recurrentes por un alegado desinterés y dejadez en proceder con sus causas de acción.[8] Los Recurrentes afectados fueron:[9]

1) Ángel Pagán Negrón
2) Hermelindo Romero Valentín
3) Flor Sáenz Carrión
4) Joaquín A. Becerril Sepúlveda
5) José A. Figueroa Medina
6) José A. Quiñones Quiñones
7) José Ernesto Quintana Soto
8) José J. Pérez Serrano
9) Juan R. Nevares Cruz
10) Luis A. Quiles Pratts
11) Manuel A. González Gelabert
12) Mario Rodríguez Laureano
13) Miguel Sánchez Rivera
14) Quintín Espinosa Robles
15) Rogelio García Rodríguez
16) Hermelindo Cuevas Ruiz
17) Santiago Rodríguez Ramos
18) Ramón E. Méndez Alicea
19) Luis A. Torres Jaime
20) Luis Cruz Flores
21) Marcos Rodríguez Rodríguez
22) Juan Caraballo Justiniano
23) Moisés Meléndez Ríos
24) Francisco Ortiz Cirino
25) Orlando Colón Torres

---

[4] *Íd.*, Anejo VIII, pág. 42; Véase, además, KLRA201600563, panel integrado por su presidenta, la Jueza Fraticelli Torres, la Jueza Ortiz Flores y el Juez Ramos Torres (juez ponente).

[5] Apéndice de *Alegato en Oposición*, Anejo XXXV, págs. 227-231.

[6] *Íd.*, págs. 230-231.

[7] Apéndice de *Recurso de Revisión Judicial*, Anejo I, págs. 1-12.

[8] *Íd.*

[9] Por distintas razones, seis (6) de los Recurrentes señalados están excluidos del presente recurso apelativo por, entre otras razones, haberse acogido a los beneficios de retiro incentivado a base de la Ley Núm. 70-2010 (Orlando Colón Torres, Oscar Olmeda Mercado y Carlos René Vélez Arocho) o haber fallecido y no estar representado por el abogado de la parte recurrente (Juan Caraballo Justiniano, Moisés Meléndez Ríos y Francisco Ortiz Cirino).

26) Oscar Olmeda Mercado
27) Carlos René Vélez Arocho

Además, mantuvo las reclamaciones de los restantes dieciséis (16) Recurrentes. Arguyó que los veintisiete (27) Recurrentes "[n]o comparecieron a la vista en su fondo del año 2015, ya que no pudieron ser notificados y, al día de hoy, no se ha presentado ninguna razón válida por la cual esta Junta de Apelaciones deba atender su reclamo de hace más de treinta años".[10] Concluye que de su incomparecencia, "resulta más que evidente su falta de interés en continuar con estos procedimientos".[11]

Ante aquella decisión, el 29 de abril de 2024, tanto los Recurrentes como la ACT presentaron las correspondientes solicitudes de reconsideración.[12] Luego de celebrar una vista argumentativa el 23 de mayo de 2024, el 10 de junio de 2024, la Junta de Apelaciones determinó No Ha Lugar a ambas solicitudes.[13] Con relación a la solicitud de reconsideración de la parte recurrente, la Junta expresó que:

> Surge del expediente que los Apelantes, a los cuales se les desestimó su causa de acción por inactividad, habían sido previamente advertidos que el incumplimiento con las órdenes de esta Junta de Apelaciones podría conllevar la desestimación de su causa de acción, con perjuicio. Se le[s] advirtió que de no presentar cada uno, documentos para justificar su incomparecencia a la vista en su fondo, se desestimaría con perjuicio sus respectivas reclamaciones por falta de interés, abandono del caso, incomparecencia a vista en su fondo e incumplimiento de órdenes de esta Junta.
> Desde el año 2015, no surge que hayan cumplido con lo ordenado y, lo último que surge del expediente, es que no habían sido contactados por su representante legal para la vista en su fondo.[14]

Inconforme con aquella determinación, el 9 de julio de 2024, los Recurrentes presentaron el *Recurso de Revisión Judicial* ante

---

[10] Apéndice de *Recurso de Revisión Judicial*, Anejo I., pág. 7.
[11] *Íd.*
[12] *Íd.*, Anejos XIV y XV, págs. 83-117 y 118-126.
[13] *Íd.*, Anejo II, págs. 13-14.
[14] *Íd.*, pág. 13.

nuestra consideración. En dicha comparecencia, hicieron los siguientes señalamientos de error:

> **PRIMER ERROR: ERRÓ LA HONORABLE JUNTA DE APELACIONES AL DETERMINAR QUE VEINTIÚN (21) APELANTES-RECURRENTES ABANDONARON Y NO MOSTRARON INTERÉS EN SU RECLAMACIÓN.**
>
> **SEGUNDO ERROR: ERRÓ LA HONORABLE JUNTA DE APELACIONES AL DESESTIMAR LA RECLAMACIÓN DE VEINTIÚN (21) APELANTES-RECURRENTES EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.**

En síntesis, alegó que la Junta de Apelaciones utilizó el mecanismo más severo en contra de los Recurrentes al desestimar sus reclamaciones, antes de "hacer las debidas advertencias o de imponer aquellas sanciones que no lesionen dramáticamente el derecho de aquellos individuos que de alguna manera estén desatendiendo su causa de acción".[15] Por otro lado, resaltó que "[h]an transcurrido aproximadamente treinta (30) años desde que se inició [el caso] y, además, ha sido paralizado en múltiples ocasiones por inacción de la propia Junta de Apelaciones o por eventos como sismos o pandemia COVID-19".[16] Así, nos ha solicitado que modifiquemos la *Resolución Parcial Final y Orden* a los fines de incluir los veintiuno (21) Recurrentes excluidos por la Junta de Apelaciones, en cumplimiento con el debido proceso de ley y los fines de la justicia.

Con la comparecencia de la ACT, nos encontramos en posición para resolver, primero exponiendo el derecho aplicable a las controversias ante nuestra consideración.

## II.

### A.

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de

---

[15] *Recurso de Revisión Judicial,* pág. 10.
[16] *Íd.*, pág. 12.

Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho**

emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.

*Hernández Feliciano v. Mun. Quebradillas, supra,* pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Entre las determinaciones de hechos y las conclusiones de derecho, los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Íd.*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

Los procedimientos adjudicativos de los organismos y agencias administrativas constituyen "[un] sistema paralelo de impartir justicia y resolver controversias". *In re Moreno Cortés*, 159 DPR 542, 548 (2003). Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. *Acarón et al. v. D.R.N.A.*, 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "**las garantías mínimas que exige el debido proceso de ley**, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas". *Íd.* (Énfasis nuestro).

Tanto la Constitución de Puerto Rico como la Constitución de Estados Unidos disponen de manera categórica que "ninguna persona podrá ser privada de su libertad o propiedad sin el debido proceso de ley". Artículo II, Sección 7, Const. ELA [Const. PR], LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. En el ámbito judicial y cuasi judicial, el debido proceso de ley se manifiesta en dos dimensiones: la procesal y la sustantiva. *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012); *Domínguez Castro et al. v. ELA I,* 178 DPR 1, 35 (2010). Para propósitos de nuestro análisis, únicamente es relevante el debido proceso de ley en su vertiente procesal.

De manera abarcadora, "el debido proceso de ley se refiere al 'derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo'". *Aut. Puertos v. HEO, supra,* pág. 428 (citando a *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995)). En su vertiente procesal, el debido proceso de ley "requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad". *Íd.* De manera jurisprudencial y estatutaria, se ha reconocido que las garantías mínimas del debido proceso de ley exigen lo siguiente: (1) **una notificación oportuna**; (2) la presentación de evidencia; (3) una adjudicación justa e imparcial; y, (4) que esa adjudicación se base en el expediente del caso. Sección 3.1, LPAU, *supra*; *Vendrell López v. AEE,* 199 DPR 352, 359-360 (2017) (Sentencia); *Báez Díaz v. E.L.A.,* 179 DPR 605, 624 (2010); *Álamo Romero v. Adm. De Corrección,* 175 DPR 314, 329 (2009).

Crucial para el debido proceso de ley es la debida notificación de la vista, querella o proceso activo en el foro administrativo. La Sección 3.9 de la LPAU, *supra,* dispone que "[l]a agencia notificará

por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa". *Íd.* Dicha notificación deberá contener la siguiente información:

> (a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.
>
> (b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.
>
> (c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.
>
> (d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.
>
> (e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.
>
> (f) Advertencia de que la vista no podrá ser suspendida.
>
> *Íd.*

"La correcta notificación constituye un requisito indispensable del debido proceso de ley que concede la oportunidad de considerar si se ejercen los remedios concedidos en la ley". J.A. Echevarría Vargas, *Derecho administrativo puertorriqueño*, 5ª ed. rev., San Juan, Ed. SITUM, 2023, pág. 221; *JP v. Asoc. Res. Altamira*, 198 DPR 656 (2017).

> La notificación de la querella es requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo. Su incumplimiento violenta el derecho a ser oído, toda vez que forma parte y está ligada a él de manera indisoluble. A través de la notificación se le informa a la parte querellada de las alegaciones en su contra y se le concede oportunidad razonable para contestar y presentar su caso. Es un requisito elemental del debido proceso de ley. Son dos sus componentes: (1) [e]l derecho a conocer sus garantías, como lo es el derecho a la vista; y (2) **[l]a notificación adecuada de la celebración de la vista y de las controversias que se dirimirán en ella**.
>
> D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ª ed. rev., Colombia, Ed. Fórum, 2013, pág. 185. (Énfasis nuestro).

Cónsono con las disposiciones de la LPAU, la Sección 19.7 (5) del Reglamento de Personal de la Autoridad de Carreteras y Transportación, Reglamento Núm. 8111, 30 de noviembre de 2011 (Reglamento de Personal 2011), dispone que "[l]a Junta de Apelaciones notificará por escrito a todas las partes o a sus representantes autorizado e interventores, la fecha, hora y lugar en que se celebren las vistas". *Íd.*

Además, las agencias administrativas tienen la obligación de notificar debidamente las decisiones emitidas en los procedimientos adjudicativos. *Román Ortiz v. OGPe*, 203 DPR 947 (2018). En su deber de diligenciar la notificación, la agencia debe proceder tal y como lo haría una persona realmente deseosa de informar a la parte afectada por la determinación y realizar los esfuerzos razonables adicionales para garantizar la notificación. *Sánchez Rivera v. Herbert J. Sims & Co.*, 208 DPR 841, 866 (2022). "[E]sas diligencias no exigen que las agencias hagan lo absurdo e imposible, sino que 's[o]lo requieren que se haga lo razonable a la luz de la totalidad de las circunstancias [de] cada caso'". *Íd.* (citando a *Román Ortiz v. OGPe, supra*, pág. 965).

Por lo tanto, tanto la notificación de una vista como la notificación de una determinación constituyen "un componente indispensable del debido proceso de ley y su incumplimiento constituye un defecto jurisdiccional. Ello pues la notificación constituye el vehículo que confiere la oportunidad de adquirir conocimiento de la determinación administrativa". J.A. Echevarría Vargas, *op. cit.*, pág. 268; *Metro Senior v. AFV*, 209 DPR203 (2022); *JP v. Asoc. Res. Altamira, supra.*

## C.

El abandono, dejadez o falta de diligencia en el trámite de un caso, sea ante los foros judiciales o administrativos, constituye

razón suficiente para que el foro archive la causa de acción. Al interpretar las Reglas de Procedimiento Civil, 32 LPRA Ap. V, el Tribunal Supremo ha resuelto que "[e]l abandono del pleito por inactividad o la falta de emplazamiento dentro del término provisto por ley provocan demoras innecesarias que tienen consecuencias perjudiciales no tan sólo para un efectivo sistema de justicia, sino para el demandado" o querellado. *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 721 (2009) (cita omitida).

Dicha conducta podrá conllevar la desestimación del recurso presentado. Al amparo de las Reglas de Procedimiento Civil, *supra*, "[l]a desestimación por dejar de proseguir el proceso tiene lugar cuando el demandante ha dejado de cumplir con su deber de impulsar el proceso por un periodo injustificadamente largo de tiempo". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 413; Regla 39.2, Reglas de Procedimiento Civil, *supra*. Ahora bien, los foros judiciales y administrativos deben utilizar la desestimación con cautela, puesto que esta constituye una acción drástica, que puede conducir a la negativa del derecho a ser oído a cabalidad y violentar el debido proceso de ley. La desestimación tiene el efecto de una adjudicación en los méritos salvo que sea por falta de jurisdicción o de parte indispensable. Regla 39.2 (c), Reglas de Procedimiento Civil, *supra*.

Debido al interés de que las agencias administrativas operen de manera más flexibles que los tribunales, como norma general, las Reglas de Procedimiento Civil no aplican automáticamente en los procedimientos administrativos; no obstante, "nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo, cuando las mismas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica". *Industria Cortinera, Inc. v.*

*Puerto Rico Telephone Co.*, 132 DPR 654, 660 (1993). En este sentido, la consecuencia fatal de una desestimación podrá perjudicar gravemente el derecho al debido proceso de ley consagrado por nuestra Constitución.

El Reglamento de Personal 2011, *supra¸* permite que los jueces administrativos de la Junta de Apelaciones desestimen "una apelación ante la clara inacción, abandono y falta de interés demostrado por la parte apelante; o por su reiterado y contumaz incumplimiento con las órdenes y disposiciones de los Jueces Administrativos, **luego de haberle apercibido**". Sección 19.6 (1) (h), *Íd.* (Énfasis nuestro). La LPAU, por su parte, dispone que:

> La agencia podrá imponer sanciones, en su función cuasijudicial, en los siguientes casos:
> (a) [...]
> (b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, **si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia**.

Sección 3.21 (b), LPAU, *Íd.* (Énfasis nuestro).

Surge tanto del texto del Reglamento de Personal 2011, como de la LPAU, que la desestimación es una herramienta disponible para la Junta de Apelaciones para asegurar el trámite rápido y eficiente del caso. Aun así, ambas disposiciones requieren el cumplimiento con el debido proceso de ley, entiéndase la notificación del incumplimiento o dejadez de la parte. Además, la LPAU dispone claramente que la desestimación solo debe proceder luego de que se hayan impuesto sanciones menos severas; es decir, en última instancia. Estas disposiciones son cónsonas con lo resuelto por el Tribunal Supremo de Puerto Rico, que:

> [L]a desestimación de un caso como sanción, debe prevalecer únicamente en situaciones extremas en las cuales *haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés y después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia*

*y, en todo caso, no debería procederse a ella sin un previo apercibimiento.*

*Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 222 (2001). (Énfasis en la original).

### III.

Esbozado el derecho aplicable, nos encontramos en posición para resolver las controversias presentadas por los Recurrentes. Por estar íntimamente relacionados, estaremos atendiendo los señalamientos de error en conjunto. En síntesis, los Recurrentes alegaron que erró la Junta de Apelaciones al concluir que los veintiún (21) Recurrentes incurrieron en abandono de causa y proceder con la desestimación de sus reclamaciones.

Toda persona tiene derecho al debido proceso de ley en cualquier procedimiento en el que se le vean afectados sus derechos o propiedad. En el caso de autos, no existe controversia en cuanto al interés propietario que tienen los Recurrentes sobre los alegados pagos por horas extras que les debe la ACT. En este sentido, se cumple con el requisito necesario para activar las garantías del debido proceso de ley.

Como hemos resaltado, la notificación constituye un requisito indispensable para cumplir con las garantías mínimas del debido proceso de ley. La notificación debe comunicarle a la parte que se celebrará una vista a la cual podrá comparecer y ser oído o, que celebrada la vista, el foro administrativo ha dictado una determinación. Sin las referidas notificaciones, las partes se ven impedidas de velar por sus derechos de una manera diligente y conforme los estatutos vigentes.

Por otro lado, la Junta de Apelaciones tiene dentro de sus deberes velar por el trámite rápido y eficiente del caso ante su consideración. Para cumplir con este deber, tiene la facultad de desestimar un reclamo cuando la parte haya incurrido en abandono o dejadez de su causa de acción. Sin embargo, este curso de acción

debe ser tomado como último recurso, luego de imponer sanciones menores.

Tras un análisis completo del expediente y argumentos de las partes, surge con total claridad que la Junta de Apelaciones violentó el debido proceso de ley de los Recurrentes. Concluyó que los referidos Recurrentes abandonaron sus reclamos al no comparecer a la vista señalada para el 2015, no ser notificados y no proveer las razones válidas para las cuales la Junta de Apelaciones deberá atender sus reclamos.[17] Estas conclusiones confligen con el derecho aplicable. Por su propio reconocimiento, la Junta de Apelaciones acepta que los Recurrentes afectados no han podido ser notificados. La falta de notificación constituye un obstáculo transcendental para que los Recurrentes puedan defender sus derechos. Cumplir con esta exigencia constitucional constituye un requisito indispensable para la validez del proceso adjudicativo administrativo.

Como bien señala la parte recurrente, ha transcurrido más de treinta (30) años desde la presentación de la *Apelación.* Por otro lado, habiéndose presentado el caso en el 1994, la ACT tardó más de diecinueve (19) años en contestar la *Apelación*[18] y solicitó la paralización de los procedimientos.[19] Surge claramente que la demora en el trámite de los procedimientos no es atribuible a la parte recurrente, sino a la ACT. Se desprende, con toda claridad, que la falta de notificación es atribuible, en mayor parte, al lapso de treinta (30) años que ha tenido este caso, durante el cual varios Recurrentes han fallecido, se han mudado tanto dentro como fuera de Puerto Rico o se han acogido a los beneficios del retiro y desistido voluntariamente de sus reclamos. Esto en sí constituye justa causa de su incomparecencia a los procedimientos. De esto, no resulta,

---

[17] Apéndice de *Recurso de Revisión Judicial, supra,* Anejo I, pág. 7.
[18] Apéndice de *Alegato en Oposición, supra,* Anejo V, págs. 13-16.
[19] *Íd.*, Anejo IX, págs. 31-36.

como señaló la Junta de Apelaciones, más que evidente la falta de interés de los Recurrentes en continuar con los procedimientos.[20]

Aun habiéndose debidamente notificado a los Recurrentes, y estos incurrido en dejadez, la Junta de Apelaciones cometió un error de derecho al desestimar la causa de acción como primera sanción. Sabido es que la desestimación constituye la sanción más severa para una causa de acción, ya que constituye una adjudicación en los méritos sin que la parte adversamente afectada haya podido defender su causa de acción. Por esto, nuestro ordenamiento jurídico exige que, cuando se vaya a desestimar un reclamo por falta de interés, abandono o dejadez, el foro debe utilizar otros mecanismos de sanción para compeler la comparecencia de la parte. Del expediente, se desprende que la Junta de Apelaciones desestimó la causa de acción de los veintiún Recurrentes sin ordenar que mostrasen causa por su incomparecencia o previamente implementar sanciones menos drásticas. Al ordenar el archivo y cierre de las reclamaciones de los Recurrentes sin previa notificación o indicio de que se iban a desestimar sus causas, la Junta violentó el debido proceso de ley. Esto en contravención a las disposiciones del Reglamento de Personal 2011, *supra*, y de la Sección 3.21 de la LPAU, *supra*.

En consecuencia, la Junta de Apelaciones incurrió en un manifiesto error de derecho al ordenar la desestimación de los reclamos de los Recurrentes señalados. La realidad es que han pasado más de treinta (30) años desde que se presentó la *Apelación* y determinaciones como la recurrida han servido para alargar los procedimientos y desamparar a los Recurrentes de una adjudicación en los méritos de sus reclamaciones. Por lo tanto, resolvemos revocar la *Resolución Final Parcial y Orden* de 8 de abril de 2024, así

---

[20] Apéndice, *Recurso de Revisión Judicial, supra*, Anejo I, pág. 7.

restituyendo los reclamos de los veintiuno (21) Recurrentes antes mencionados y devolviendo el caso para la continuación de los procedimientos.

**IV.**

Por los fundamentos previamente discutidos, revocamos la determinación de la Junta de Apelaciones y devolvemos el caso para que continúen los procedimientos conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones